Merrimack
No. 83-017

THE STATE OF NEW HAMPSHIRE

v.

CLIFFORD AVERY

March 7, 1985

*Peter W. Mosseau*, acting attorney general (*Edna M. Conway*, assistant attorney general, on the brief, and *Tina Schneider*, attorney, orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, J.  On May 19, 1975, the defendant, Clifford Avery, was convicted in Superior Court (*Loughlin*, J.) on a charge of first degree murder. In this long-delayed appeal, he argues that the trial court erred in making certain evidentiary rulings, and in denying his motion for mistrial. We find no error and affirm.

From the testimony at trial, the jury could have found the following facts. In late 1973, the defendant was living in Suncook. On December 15 of that year, he told a group of acquaintances that he had $50,000 hidden on a nearby farm, and that the money came from a bank he had robbed in Arkansas. He asked one of the group, Gary Russell, to help him retrieve the money by driving him to where it was hidden. He offered to pay Russell $1,000.

That night, the group slept at an apartment in Suncook regularly occupied by Gary Russell and his girl friend, Lee Ann Greeley. The

next morning, December 16, Gary Russell woke the defendant and told him, "We will go and get the money now." He also suggested that they stop off at Russell's mother's house to get his shotgun "for safety precautions."

The two men left together that morning. Shortly thereafter, Gary Russell arrived at his mother's house with a person who stayed in the car. Russell took his shotgun and some ammunition and drove away.

Late that night, the defendant returned to Suncook alone in Gary Russell's car. He spoke to Russell's brother Wendell, a friend named Mike Davis, and Lee Ann Greeley, telling them that Gary Russell was drunk, and had "passed out on a couch" somewhere nearby. After a discussion, the defendant agreed to drive Lee Ann Greeley to the place where Gary Russell allegedly was, refusing to let the others come along. The defendant and Greeley drove off. Greeley was never seen alive again.

The defendant subsequently moved in with his sister and her husband Arnold Gero, who lived in Concord. Sometime in late December or early January, he told Arnold Gero that he had killed Gary Russell. He later took him to a spot in Henniker where he said the body was supposed to be, but he was unable to find it. On another occasion, he showed Gero a place on the bank of the Merrimack River near the Bow power plant, and said that Lee Ann Greeley's body had been put into the river there.

In January 1974, the defendant left the Geros' home and eventually ended up in Arkansas at the home of David Rollans. He told Rollans that he was in trouble because he had killed two people in New Hampshire. On another occasion, he said: "It's all her fault; if it hadn't been for her nothing wouldn't ever have happened; . . . I fixed her, I threw her in the goddam river."

On May 10, 1974, Gary Russell's body was discovered in Henniker, 130 feet from the spot that the defendant had shown to Arnold Gero. Gero was questioned and implicated the defendant, recounting the above conversations. On May 20, Lee Ann Greeley's body was recovered from the Merrimack River near the power plant. She and Gary Russell had each been killed by a shotgun blast.

On May 29, 1974, the defendant was arrested at his job in Little Rock, Arkansas. Shortly after his arrest, he told police, "Well, I'm glad it's finally over." After being returned to New Hampshire, he was indicted for both murders.

The defendant was tried and convicted only for the murder of Lee Ann Greeley; the State later entered a *nolle prosequi* for the second indictment. The defendant initiated an appeal from his conviction, but it was dismissed in 1977 due to his failure to file a brief. A later

habeas corpus petition, challenging part of the trial court's jury instruction, was rejected by this court in *Martineau v. Perrin*, 119 N.H. 529, 404 A.2d 1100 (1979).

On January 19, 1984, the United States District Court for the District of New Hampshire ruled that the failure of the defendant's initial appeal had been caused by lack of effective appellate counsel, contrary to the rule of *Douglas v. California*, 372 U.S. 353 (1963). *See also Evitts v. Lucey*, 105 S. Ct. 830 (1985). The federal court ordered that a writ of habeas corpus issue unless this court accepted the instant appeal.

On appeal, the defendant raises four issues. The first two concern the testimony of Wendell Russell. At a conference in the trial judge's chambers, the judge advised Russell of his right to invoke the privilege against self-incrimination. The judge advised him of that right again during defense counsel's cross-examination, when Russell was asked whether he had told a woman that he knew who had killed his brother, and that it wasn't the defendant.

Russell invoked the privilege, and the defendant objected. During the ensuing bench conference, defense counsel said:

> "Your Honor, I can understand that the [witness] is asserting a Fifth Amendment right in connection with testifying here. All I want to enter an objection to is, in fact, the selective testifying on his part. He is testifying to what he feels like testifying to and not testifying to what he feels like not testifying to. It seems to me, if he is not going to take the Fifth with respect to all this testimony, he should not be allowed to take it with respect to the particular testimony."

The court overruled the objection. Defense counsel did not take an exception to the ruling, and the discussion shifted to the question whether Russell could be asked about a prior conviction for assault. The only exception taken during the entire discussion was to a ruling limiting cross-examination on this latter issue.

The defendant now argues that the court erred twice: first, in failing to strike Russell's entire testimony, because his invocation of the privilege denied the defendant his right to confront the witness; and second, in allowing Russell to invoke the privilege at all, because there was no basis for a conclusion that Russell's answer might have been incriminating.

The first issue raised by the defendant is not properly before us. "To preserve issues for our consideration, counsel must take contemporaneous objections and exceptions." *State v. Shute*, 122 N.H.

498, 505, 446 A.2d 1162, 1166 (1982). In this case, no exception was taken.

The defendant asks that we relax the exception requirement because, he argues, this is a situation "where questions of law are apparent from the face of the record." *Gove v. Crosby*, 100 N.H. 380, 381, 128 A.2d 205, 206 (1956). That is clearly not the case here.

Not only did defense counsel not request that Russell's testimony be stricken, but he never referred directly to the right of confrontation. In these circumstances, the trial court had no opportunity to correct the error alleged here, and thus no question was preserved for review by this court. *See Martineau v. Perrin*, 119 N.H. at 531–33, 404 A.2d at 1102–03.

■ As to the second question, assuming *arguendo* that it was properly preserved, the established rule is that "the privilege [against self-incrimination] applies not only to answers which would support a conviction, but also to those which would furnish a link in the chain of evidence needed to prosecute someone who claims the privilege." *State v. Merski*, 121 N.H. 901, 912, 437 A.2d 710, 716 (1981), *cert. denied*, 455 U.S. 943 (1982).

■ During a prior conference, defense counsel had referred to a police report indirectly quoting a woman as saying that Wendell Russell had admitted killing his brother. Although the woman later testified that she had heard Russell say something quite different, the court had ample grounds for concluding that Russell had sufficient reason for claiming the privilege. *See also State v. Bell*, 112 N.H. 444, 298 A.2d 753 (1972). There was no error in permitting the claim to stand.

The defendant's third argument is that the trial court should have declared a mistrial when the prosecutor, while cross-examining the defendant, suggested indirectly that his conviction would result in a prison sentence. Specifically, he asked: "If you get convicted, you are going to be spending a lot of years behind bars, is that correct?" The trial judge had earlier instructed the prosecutor that the jury was not to be informed of the possible penalty because the jury had no role in assessing that penalty. *State v. Tetrault*, 78 N.H. 14, 16, 95 A. 669, 670 (1915).

The court denied the defendant's motion for a mistrial, finding that the prosecutor had not intentionally violated the court's instructions. This finding was not clearly erroneous; nor can we say that the information conveyed to the jury "was inadmissible and both preponderantly and irremediably prejudicial." *State v. Elbert*, 125 N.H. 1, 13, 480 A.2d 854, 861 (1984).

■ Although the prosecutor's question here was improper, the trial court could reasonably have found it insufficiently prejudicial to demand a mistrial. The evidence for the defendant's guilt, as recounted above, was so strong that we can say beyond a reasonable doubt that the improper question could not have affected the verdict. *See State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976).

■■ The defendant's final argument is that the trial court should have excluded evidence pertaining to the murder of Gary Russell, because the defendant was being tried only for the murder of Lee Ann Greeley, and because evidence of other crimes is not admissible to show a propensity for crime. *See State v. LaBranche*, 118 N.H. 176, 178, 385 A.2d 108, 109 (1978). This argument is without merit. Evidence pertaining to motive is admissible, *id.*, and "evidence of the conduct of an accused at or near the time of the alleged offense if relevant is also admissible even though another crime is involved." *State v. Palumbo*, 113 N.H. 329, 332, 306 A.2d 793, 796 (1973).

■ The evidence that Gary Russell and Greeley were both killed with a shotgun; that they were both last seen with the defendant on the same day; that the defendant had spoken of two killings to David Rollans; and that Greeley, as Russell's girl friend, was one of the few people who might have inquired seriously into his disappearance, was sufficient to support an inference that the defendant murdered Greeley to cover up the murder of Russell. Evidence tending to show the defendant's involvement in Russell's murder was accordingly relevant to the instant case, and was properly admitted.

*Affirmed.*

BATCHELDER and SOUTER, JJ., did not sit; the others concurred.