Merrimack
No. 86-263

CLIFFORD AVERY

v.

MICHAEL CUNNINGHAM, WARDEN,
NEW HAMPSHIRE STATE PRISON

December 9, 1988

*Randall and Bownes,* of Laconia (*David H. Bownes* on the brief and orally), for the petitioner.

*Stephen E. Merrill,* attorney general (*T. David Plourde,* assistant attorney general, on the brief, and *Andrew Serrell,* assistant attorney general, orally), for the State.

THAYER, J.   Petitioner was convicted of first degree murder on May 19, 1975, and sentenced to life imprisonment. His subsequent appeal to this court resulted in our affirming his conviction. The petitioner filed a motion for a new trial along with a petition for a writ of habeas corpus in superior court, alleging, *inter alia,* ineffective assistance of counsel. The Superior Court (*Murphy,* J.) denied both motions, and for the reasons that follow, we affirm.

This case arises out of the deaths of Lee Ann Greeley and Gary Russell. The petitioner, Clifford Avery, was tried, however, only for the death of Lee Ann Greeley. The trial testimony, more fully detailed in *State v. Avery,* 126 N.H. 208, 490 A.2d 1350 (1985), indicates that the following facts could be found. In December 1973, the petitioner informed a group of acquaintances that he had $50,000 hidden on a nearby farm, which he had received from a bank robbery. The petitioner asked Gary Russell to help him retrieve the money, and offered to pay Russell $1,000. Prior to leaving, the two men stopped at Russell's mother's house to get a shotgun and ammunition. Later that night the petitioner returned alone, in Gary Russell's car. The petitioner told Wendell Russell, Gary's brother, Mike Davis and Lee Ann Greeley, Gary's girl friend, that Gary Russell was drunk, passed out on a couch nearby. The petitioner agreed to take Lee Ann Greeley to Gary Russell, but refused to let the others come. Lee Ann Greeley was never again seen alive.

During the course of the trial, Mike Davis and Wendell Russell testified that Lee Ann Greeley and Gary Russell were last seen with the petitioner. Furthermore, there was testimony by Arnold Gero, the petitioner's brother-in-law, that the petitioner had admitted to killing Russell and had even shown Gero, on different occasions, where the bodies were located.

In 1974 the petitioner moved from New Hampshire to Arkansas, where he stayed at the house of David Rollans. Rollans testified that the petitioner had told him he was in trouble, because he had killed two people back in New Hampshire. On another occasion, the petitioner told Rollans, "It's all her fault; if it hadn't been for her nothing wouldn't ever have happened; I fixed her. I threw her in the goddam river."

Lee Ann Greeley's and Gary Russell's bodies were later found in May 1974. Gary Russell's body was 130 feet from the place the petitioner had shown Arnold Gero, and Lee Ann Greeley's body was recovered from the Merrimack River. Both had been killed by a shotgun. On May 29, 1974, when the petitioner was arrested, he told the police, "Well, I'm glad its finally over."

The petitioner claims that during his trial he was taking medication prescribed by a county jail physician. The petitioner testified that, as a result of the medication, he suffered hallucinations, confusion and loss of sleep. The petitioner's trial attorney was aware that the medication was being taken, but testified that the petitioner appeared to be competent to stand trial.

Beyond the above mentioned facts, a lengthy procedural history underlies this appeal. After petitioner's murder conviction in 1975, petitioner filed a *pro se* motion to vacate his sentence on the ground that he had not been competent to stand trial. Petitioner claimed that the drugs he was administered during the trial caused his incompetence. The Trial Court (*Loughlin*, J.) denied the motion on January 6, 1976.

The petitioner then appealed to this court. Because allegations contained in the motion created a possible conflict of interest between the petitioner and his trial counsel, new counsel was appointed to pursue petitioner's appeal. Petitioner's new counsel then filed an appearance with this court on May 3, 1976. The appeal was held in abeyance pending the resolution of various post-trial motions which petitioner had filed in the superior court, including a renewed motion to vacate the judgment due to incompetence. A hearing to reconsider the issue of competency to stand trial, however, never took place. One month before petitioner's brief on direct appeal was due, petitioner fired his appellate counsel on June 23, 1977. Since the petitioner did not file a brief, however, this court dismissed his appeal on August 16, 1977.

In November, 1981, petitioner filed *pro se* a petition for habeas corpus in the United States District Court for the District of New Hampshire, challenging his conviction, *inter alia*, on the ground that he had been incompetent to stand trial. The district court

dismissed the petition on all grounds, without prejudice, for failure to exhaust State remedies. This court, at the request of the petitioner, then appointed a second appellate counsel, who filed a motion for late appeal on January 11, 1983. After the subsequent denial of the motion by this court, the petitioner returned to the United States District Court, which held that ineffective assistance of counsel caused the dismissal of petitioner's first appeal to this court. The district court ordered that a writ of habeas corpus would be granted unless this court granted petitioner another appeal. This court accepted the petitioner's appeal on March 29, 1984.

Petitioner's appellate counsel, pursuant to the federal writ of habeas corpus and order of this court, filed a brief with this court on June 8, 1984. Because petitioner disagreed with counsel on which issues should be raised in the direct appeal, the petitioner was granted an additional two months in which to file his *pro se* supplemental brief covering issues he felt important to his appeal. The petitioner, however, failed to file a brief.

While his direct appeal was pending, petitioner filed with this court a motion to remand the case on issue of his competency to stand trial. The motion was denied on February 12, 1985. On March 7, 1985, we affirmed petitioner's conviction. *State v. Avery*, 126 N.H. 208, 490 A.2d 1350 (1985). Petitioner's appellate counsel filed a motion for reconsideration, which was denied.

Pending consideration of his direct appeal, on January 21, 1985, the petitioner also filed in the superior court a *pro se* motion for a new trial and a petition for writ of habeas corpus. In a fifty-four-page order, the Superior Court (*Murphy*, J.) denied petitioner's twenty-eight requests for relief. From this decision the petitioner appeals, raising four issues: first, whether the trial court erred in ruling that the petitioner waived the issue of competency to stand trial by not raising it in his direct appeal to this court; second, whether the trial court erred in failing to consider petitioner's incompetency claim within the context of his claims of ineffective assistance of counsel; third, whether he was denied effective assistance of counsel, thereby requiring a new trial, when trial counsel failed to preserve for appeal the issue of his right to confrontation when a State's witness invoked the fifth amendment on cross-examination; and fourth, whether the trial court erred in failing to apply the totality-of-the-evidence standard of review to petitioner's claims of ineffective assistance of trial counsel.

The first two issues of this case center around the petitioner's claim that he was not competent to stand trial in 1975. We hold, however, that the petitioner is procedurally barred from raising the

issue of his incompetency in a habeas corpus proceeding because of his failure to raise the issue on his direct appeal to this court in 1984.

New Hampshire has adopted the common law rule that habeas corpus is not a substitute for an appeal. *Springer v. Hungerford*, 100 N.H. 503, 505, 130 A.2d 588, 539 (1957). Although this court has recognized that habeas corpus proceedings may be used to consider constitutional claims challenging jurisdiction after the time for appeal has expired, *Bonser v. Courtney*, 124 N.H. 796, 807–08, 481 A.2d 524, 530 (1984), we have previously held that procedural defaults may preclude later collateral review. In *Roy v. Perrin*, when the defendant unjustifiably remained silent for four years prior to raising an objection to his sentencing procedure, he was not permitted to raise the issue in a habeas corpus proceeding. 122 N.H. 88, 100, 441 A.2d 1151, 1159 (1982). Similarly, in *Martineau v. Perrin*, 119 N.H. 529, 531–32, 404 A.2d 1100, 1102 (1979), no objections or exceptions were taken to a jury instruction, and this court found that the issue was not preserved for appellate review in a habeas corpus proceeding. Furthermore, the United States Supreme Court has recognized the validity of procedural waiver as a bar to relief under federal writs of habeas corpus. *Wainwright v. Sykes*, 433 U.S. 72, 86–87 (1977).

The petitioner in this case had actual knowledge of the competency issue and raised it before the trial court shortly after his conviction. He had raised it in a *pro se*, post-trial motion before the superior court in December of 1975. In 1976 he was provided an opportunity to pursue a motion to have the superior court reconsider his motion to vacate judgment. He again presented the issue in a *pro se* writ of habeas corpus before the federal district court in November of 1981. Furthermore, the petitioner was provided an opportunity to file a *pro se* supplemental brief before this court in his 1984 appeal, at which time the issue of the denial of his motion to set aside on the grounds of incompetency would have properly been before this court for review. The petitioner, however, never filed the supplemental brief. Accordingly, since the petitioner had both knowledge of the issue and an opportunity to raise it properly before this court on direct appeal, but failed to do so, he has procedurally waived the issue for collateral review.

Today's holding ensures an orderly and nondisruptive presentation of claims. *See id.* This ruling serves to discourage parties from sitting on their claims until circumstances are more advantageous. To hold otherwise might "encourage defendants serving lengthy

sentences to lie back and wait, and to attack the basis of the sentencing after witnesses with relevant knowledge have died or have otherwise become unavailable, or after pertinent records have become routinely destroyed, lost or otherwise unavailable." *Diaz Torres v. United States*, 564 F.2d 617, 619 (1st. Cir. 1977). In the present case, the prison medical records describing the drugs taken by the petitioner were routinely destroyed after seven years, thereby making them unavailable when the issue was finally presented. Today's holding will help prevent such delayed presentation of claims. Furthermore, it would be unwise to allow the petitioner to use a collateral proceeding alleging ineffective assistance of counsel as a means of circumventing the court's procedural requirements. Accordingly, we hold against the petitioner on the second issue he raises.

The third issue raised by the petitioner is whether he was denied effective assistance of counsel, thereby requiring a new trial, when trial counsel failed to preserve for appeal the issue of his right to confrontation of a State's witness who invoked the fifth amendment. On this issue, the petitioner further argues that he need not prove prejudice because prejudice is presumed when his right of confrontation is abridged.

This issue centers around the testimony of Wendell Russell and his subsequent invocation of the privilege against self-incrimination which is protected by the fifth amendment of the United States Constitution and part I, article 15 of the New Hampshire Constitution. At trial, Wendell Russell's direct testimony had placed the petitioner in the company of Lee Ann Greeley and Gary Russell shortly before their disappearances. He also testified regarding the $50,000 hidden in the woods. On cross-examination, Russell refused to answer questions relating to an alleged incriminating statement he made to Elsie Bovee. When defense counsel asked the witness on cross-examination whether he made a statement to Ms. Bovee that he knew who had killed his brother "and it wasn't Avery [petitioner]," the witness invoked his fifth amendment privilege and refused to answer the question. Defense counsel objected on the ground that the witness was selectively testifying. Defense counsel later called Ms. Bovee as a witness. When asked if Wendell Russell had made any statements in connection with his brother's death, she testified that Wendell Russell said he was nervous and jumpy because people thought he did it. Ms. Bovee testified that she asked Russell if he had killed his brother, he said "it makes no difference whether I did or not . . . Avery is in jail for doing it, and if he gets away with it I will kill him, anyway."

■■ The petitioner argues that trial counsel's failure to preserve the issue of confrontation for appeal constituted ineffective assistance of counsel, thereby requiring a new trial. The superior court, in denying petitioner's claim of ineffective assistance, appropriately noted two conflicting constitutional rights. On the one hand, criminal defendants have a right to confront witnesses, which includes the right of cross-examination. *Pointer v. Texas*, 380 U.S. 400, 403–04 (1965); *State v. Chaisson*, 123 N.H. 17, 30, 458 A.2d 95, 103 (1983); *see* U.S. CONST. amend. VI; N.H. CONST. pt. I, art. 15. On the other hand, a witness has a right against compulsory self-incrimination when testifying, under the fifth amendment of the United States Constitution and part I, article 15 of the New Hampshire Constitution. *State v. Bell*, 112 N.H. 444, 447, 298 A.2d 753, 756 (1972). Although the petitioner's brief argues that the trial judge erroneously permitted Wendell Russell to invoke the privilege against self-incrimination on cross-examination, this court, in the petitioner's direct appeal, specifically held that the privilege had been correctly asserted. *State v. Avery*, 126 N.H. at 212, 490 A.2d at 1353.

The petitioner argues here that trial counsel was ineffective because he failed on the record to preserve the issue, with respect to Wendell Russell's invocation of the fifth amendment, that the petitioner's constitutional right to confrontation was abridged. The petitioner asserts that had trial counsel properly objected, two remedies would have been available to him; the first was to have the witness' direct testimony stricken, and the second was to seek immunity for the witness.

The petitioner rests his claim of ineffective assistance of counsel on both the sixth amendment to the Constitution of the United States and part I, article 15 of the Constitution of New Hampshire. We begin, as we must, by first making an independent analysis of the protection afforded under the New Hampshire Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), using decisions of the United States Supreme Court and other jurisdictions only as guides in our analysis, *see Michigan v. Long*, 463 U.S. 1032, 1041 (1983).

■■ Construing part I, article 15 of the Constitution of New Hampshire, this court has applied a two-part test for determining whether an attorney has provided effective assistance, and in so doing has adopted the test applicable under the Federal Constitution. Under this test, a court must determine, using an objective standard, whether trial counsel acted with reasonable competence. *State v. Faragi*, 127 N.H. 1, 4, 498 A.2d 723, 726 (1985). If counsel's

competence falls below the objective standard, the "defendant must also demonstrate that he has actually been prejudiced thereby, before he is entitled to a new trial." *Id.* at 5, 498 A.2d at 726. The defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* (quoting *Breest v. Perrin,* 125 N.H. 703, 706, 484 A.2d 1192, 1194–95 (1984), itself quoting *Strickland v. Washington,* 466 U.S. 668, 694 (1984)). If a defendant is unable to demonstrate such prejudice, the court is not required to determine whether counsel's performance fell below the objective standard. *Faragi,* 127 N.H. at 5, 498 A.2d at 726.

The petitioner argues, however, that he need not demonstrate actual prejudice because he was denied his right of confrontation. The petitioner relies on a narrow exception to *Strickland's* prejudice prong. In *Strickland,* the Court noted that "[i]n certain Sixth Amendment contexts prejudice is presumed." *Strickland,* 466 U.S. at 692. Prejudice is presumed when there is an actual or constructive denial of assistance, when counsel is burdened by an actual conflict of interest, or when the State interferes with counsel's assistance. *Id.* In *United States v. Cronic,* the Supreme Court elaborated on the narrow exception to the requirement that the defendant must demonstrate actual prejudice. The Court noted:

> "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. No specific showing of prejudice was required in *Davis v. Alaska,* 415 U.S. 308 (1974), because the petitioner had been 'denied the right of effective cross-examination' which 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' *Id.* at 318."

*Cronic,* 466 U.S. at 659.

The petitioner argues that he falls into this exception and, therefore, need not demonstrate prejudice because, much like in *Davis v. Alaska, supra* at 318, he was denied an opportunity to cross-examine the witness. In *Davis,* the trial court granted the prosecution's motion for a protective order prohibiting the questioning of the key prosecution witness concerning his adjudication as a juvenile delinquent for a burglary, and also concerning his probationary status at the time of the events as to which he was to testify. *Davis,* 415 U.S. at 311. The United States Supreme Court held that the confrontation clause guaranteed the defendant the right to cross-examine the State's only witness to establish possible

bias arising from the witness' juvenile record. *Id.* at 319. The defense in *Davis* was that the witness had committed the crime for which the defendant was on trial. The Court noted that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316–17.

The petitioner's reliance on *Davis*, however, is misplaced. Unlike the instant case, *Davis* did not involve the witness' proper invocation of the fifth amendment. Accordingly, there did not exist a countervailing constitutional right. Furthermore, in *Davis*, because the witness was the State's only witness, he was a crucial element in the State's case against the defendant. In this case, Wendell Russell's direct testimony was not a crucial link in proving the petitioner's guilt. Russell's direct testimony was cumulative, and was much less critical than the combined testimony of Arnold Gero and David Rollans that the petitioner had admitted to the killings and had shown Gero where the bodies were located.

■ This court has previously reviewed the requirements of *Davis* in the context of considering when a defendant should be permitted to impeach the general credibility of a witness with evidence of a prior criminal conviction. *Chaisson*, 123 N.H. 17, 458 A.2d 95. We noted there that, when making such a determination, "the court should consider whom the defendant wishes to impeach, the importance of that witness' testimony, and whether there is sufficient independent evidence of guilt so that credibility of that witness is not of a constitutional dimension." *Id.* at 33, 458 A.2d at 105. Accordingly, our reading of *Davis* indicates that because Russell's testimony was cumulative, and because he was not a key witness, the denial of a right to cross-examine him on issues with respect to which he properly invoked the fifth amendment is not constitutional error of the first magnitude and, therefore, prejudice is not presumed.

It should also be noted that the situations in which prejudice is presumed, as noted in *Cronic*, have been narrowly construed by other courts. The United States Court of Appeals for the Eleventh Circuit has noted that the exception "applies to only a very narrow spectrum of cases where circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Chadwick v. Green*, 740 F.2d 897, 901 (11th Cir. 1984); *see Gardner v. Ponte*, 817 F.2d 183, 187 n.2 (1st Cir.), *cert. denied, Gardner v. Maloney*, 108 S. Ct. 181 (1987). It is clear from the facts of this case that trial counsel did subject the prosecution's case to meaningful adversarial testing.

Accordingly, to establish a claim of ineffective assistance of counsel, the petitioner must demonstrate actual prejudice as required by *Strickland* and *Faragi*.

■ The petitioner argues that he was prejudiced because the direct testimony of Wendell Russell was not stricken, and trial counsel's failure to move to strike denied the petitioner effective assistance of counsel. We hold that trial counsel's failure to move to strike the testimony was not ineffective assistance of counsel. The superior court specifically found that the petitioner had failed to meet his burden of demonstrating that, but for defense counsel's failure to move to strike the witness' direct testimony, the result of the proceeding would have been different. *State v. Faragi*, 127 N.H. at 5, 498 A.2d at 726 (quoting *Breest*, 125 N.H. at 706, 484 A.2d at 1194–95, itself quoting *Strickland*, 466 U.S. at 694). The evidence against the petitioner was overwhelming. The combined testimony of Arnold Gero and David Rollans was that he had admitted to the killings, and had even told Gero where the bodies were located. Furthermore, the direct testimony of Wendell Russell, as previously discussed, was not a crucial link to the crime. Accordingly, the superior court did not err in finding that petitioner did not show that if trial counsel had moved to strike Russell's direct testimony, the result of the trial would have been different. Because we find no prejudice, we need not address the issue of whether counsel's actions fell below an objective standard of reasonable competence. We therefore find no violation of either the defendant's State or his federal constitutional rights.

■■ On the issue of trial counsel's failure to seek immunity for the witness, the trial court specifically found that the petitioner had failed to demonstrate to a reasonable probability that, but for trial counsel's failure, the result of the proceeding would be different. In New Hampshire, the power to grant immunity to a witness lies solely in the discretion of the attorney general, not in the court or defense counsel. RSA 516:34. This court has previously ruled that a defendant has no constitutional right to have immunity conferred upon a witness who claims the right against self-incrimination and who possesses potentially exculpatory evidence. *State v. Linsky*, 117 N.H. 866, 884, 379 A.2d 813, 824 (1977). Accordingly, failure of defense counsel to request immunity for a witness, something to which the defendant has no constitutional right, cannot be said to make his action fall below the objective standard of reasonable competence. *See People v. Pineda*, 30 Cal. App. 3d 860, 106 Cal. Rptr. 743 (1973).

The petitioner finally claims that the superior court erred in failing to consider crucial elements of his claim of ineffective assistance of counsel and failed to examine the totality of the evidence in rendering its opinion. First, regarding the totality of the evidence, the petitioner relies on *Strickland v. Washington*, 466 U.S. 668, in which it was noted that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Petitioner argues that the superior court erred in engaging in an independent analysis of each of the claimed errors. This independent analysis, the petitioner asserts, was a failure to consider the totality of the evidence, as called for in *Strickland*.

The petitioner's reading of *Strickland* is incorrect. In *Strickland*, "the ultimate focus of the inquiry [was] on the fundamental fairness of the proceeding whose result [was] being challenged." *Id.* at 696.

> "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Id.* at 695–96. We hold that the superior court's issue-by-issue application of *State v. Faragi*, 127 N.H. 1, 498 A.2d 723, did provide an inquiry into the fundamental fairness of the proceeding. When making a determination of whether actual prejudice has resulted, a court needs to examine the "totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. A court should consider the totality of the evidence in determining whether the decision reached would have been different, absent the error. *See id.* at 695–96. The totality of evidence concept expressed in *Strickland* was the

test to be applied when considering each claimed error. Because the superior court examined each claimed error in light of all the evidence, when determining whether actual prejudice occurred, we find that the independent analysis of each claimed error provided for a thorough and complete inquiry into the fairness of the proceeding. Here, the admitted evidence that is not contested overwhelmingly supported the verdict. Accordingly, the petitioner has failed to carry his burden.

The petitioner lastly argues that the superior court erred in failing to consider crucial elements of his claim of ineffective assistance of counsel. The petitioner alleges six instances of ineffective assistance of counsel which he argues the superior court failed to address.

The petitioner argues that counsel was ineffective in failing to object to an allegedly erroneous jury instruction regarding the presumption of innocence. It is also asserted that trial counsel's failure to take corrective action with regard to alleged instances of prosecutorial misconduct involving pretrial publicity, improper cross-examination, distortion of facts during closing argument, favorable police treatment of a State's witness, and the State's failure to turn over exculpatory evidence, constituted ineffective assistance of counsel.

The superior court addressed many claims of ineffective assistance of counsel which were similar to or mere restatements of these claims. Based upon a review of the petitioner's pleadings before this court, we recognize the difficulty the superior court had in sorting out the petitioner's many claims. We hold, however, that all six claims of ineffective assistance fail, as a matter of law. The petitioner has not alleged any facts to support a claim of prejudice; more importantly, he has failed to demonstrate, before either the trial court or this court, how the result of his trial would have been different, but for these claimed errors. We have noted that· "the burden rests on the defendant to demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Faragi*, 127 N.H. at 5, 498 A.2d at 726 (quoting *Breest v. Perrin*, 125 N.H. at 706, 484 A.2d at 1194–95, itself quoting *Strickland v. Washington*, 466 U.S. at 694). Because petitioner has failed to indicate how the claimed errors prejudiced the outcome, it is clear that the petitioner has failed to meet this burden. Furthermore, because the weight of evidence in support of the defendant's guilt was so strong, *Avery*, 126 N.H. at 213, 490 A.2d

at 1354, the claimed errors would in no way have changed the outcome.

The analysis and the result would be no different under the sixth amendment, and we therefore will not discuss the federal claim of ineffective assistance of counsel separately. *See Strickland v. Washington supra.* Accordingly, we conclude that the superior court's decision should be affirmed.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.