Carroll
No. 84-602

THE STATE OF NEW HAMPSHIRE

v.

JOSEPH A. ALLEGRA

October 9, 1987

722

*Stephen E. Merrill*, attorney general (*T. David Plourde*, assistant attorney general, on the brief and orally), for the State.

*McNamara, Larsen & Schuster P.A.*, of Lebanon (*Mark A. Larsen* on the brief and orally), for the defendant.

SOUTER, J.  The defendant appeals from an order of the Superior Court (*Dickson*, J.) denying his motion for a new trial on related charges of forgery and attempted theft by deception. He claims to have been denied the effective assistance of counsel and argues that the trial court should have found that in four instances he was prejudiced by performance of trial counsel that fell below the standard of reasonable competence: when counsel (1) failed to move for dismissal of the class B felony forgery indictment that in fact charged only a misdemeanor; (2) failed to object to repeated jury instructions that materially altered the forgery charge; (3) failed to object to the introduction of extrinsic evidence of bad character; and (4) failed to move to suppress evidence seized under a warrant to search the defendant's house. Although we conclude that the trial court erred in failing to find that counsel's performance fell below the standard of reasonable competence in the second of these instances, the defendant has not demonstrated constitutionally cognizable prejudice. Because, however, the sentencing determinations could have been affected by counsel's failure to challenge the forgery indictment as charging only a misdemeanor, we remand the case for reconsideration of the sentences.

After a storm had damaged an advertising sign maintained by the defendant in his business, Public Service Company of New Hampshire disconnected the sign's power supply on December 8, 1983. The power company apprised the defendant of the damage and disconnection by a letter dated December 7, addressed to the defendant's business but directed to the defendant at a post office box address. On December 8, the defendant arranged to cover the sign under an existing insurance policy, although he did not disclose the earlier damage for which he submitted a claim under the policy in January 1984. The supporting documentation for the claim which he provided at that time included a copy of the letter from the Public Service Company, the date of which had been altered from December 7 to December 19, 1983.

Before the insurer paid the claim, however, an informer told the police that the defendant had submitted a fraudulent claim, using the altered letter from the power company. The police verified the fact of the claim, and the date the insurance coverage was added. They then compared the Public Service Company's copy of the letter with the copy submitted by the defendant to the insurance agent. They concluded that the date on the letter submitted with the claim had been altered with a typewriter having somewhat larger characters than those on the machine used by the power company and, on the basis of this information, obtained a warrant to search the defendant's house for, *inter alia*, an unaltered copy of the letter and the typewriter used to change its date. They found a copy bearing the correct date, which the State introduced in evidence at the defendant's ensuing trial.

After his conviction, the defendant filed a series of motions for new trial on grounds of ineffective assistance of counsel. After these were denied, the defendant's most recent counsel brought this appeal, resting it on both State and federal grounds raised in the superior court.

We have previously held that the same objective standard of reasonable competence governs claims of ineffective assistance, whether raised under part I, article 15 of the Constitution of New Hampshire or under the sixth and fourteenth amendments of the National Constitution, *State v. Faragi*, 127 N.H. 1, 4–5, 498 A.2d 723, 726 (1985), and we therefore do not discuss the federal claim separately from our State analysis, *see State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

Under the procedure detailed in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant claiming post-trial relief based on inadequate representation must first demonstrate that his lawyer's performance fell below the objective standard of reasonably effective assistance, by errors so serious that he was not in fact functioning as counsel guaranteed by the constitutions. *Id.* at 687. This burden reflects the strong initial presumption that counsel's actions fall within the limits of reasonable conduct, "bearing in mind the limitless variety of strategic and tactical decisions that counsel must make." *Faragi, supra* at 5, 498 A.2d at 726. Second, the defendant must show active prejudice to the degree of a reasonable probability that the result of the proceeding would have been different, had it not been for counsel's deficient performance. *Strickland, supra* at 694; *Faragi, supra* at 5, 498 A.2d at 726. We proceed to this dual inquiry, then, with respect to each of the examples adduced as instances of inadequate representation.

The first was trial counsel's failure to move for dismissal of the forgery indictment on the ground that it merely charged a misdemeanor. This claim of incompetence initially raises two distinct issues: whether the indictment charged only a misdemeanor, and whether counsel should have moved to dismiss it. The trial court apparently thought it was uncertain whether the indictment charged a felony or a misdemeanor, and concluded that the uncertainty left counsel free to move for dismissal or not, as a tactical matter not subject to review. Before us, the defendant stands his ground in maintaining that the indictment charged only a misdemeanor, and the State has taken the position that it charged a felony. The defendant is correct.

Forgery is defined in terms of the fraudulent preparation or alteration of a written document, or the fraudulent use of such an altered writing. RSA 638:1, I(a) and (b). RSA 638:1, III and IV grade the seriousness of the offense by these provisions:

> "III. Forgery is a class B felony if the writing is or purports to be:
>   (a) A security, revenue stamp, or any other instrument issued by a government, or any agency thereof; or
>   (b) A check, an issue of stocks, bonds, or any other instrument representing an interest in or a claim against property, or a pecuniary interest in or claim against any person or enterprise.
> IV. All other forgery is a misdemeanor."

The forgery indictment in this case charged that the defendant "did purposely alter the writing of the Public Service Company . . . by changing the date on a disconnect notice [*i.e.*, letter] sent to Joseph Allegra. . . ." The indictment included the notation, "Class B Felony."

■ The notation was clearly wrong. The letter or "disconnect notice" is not one of the documents specifically listed in RSA 638:1, III(a) and (b). Nor does it fall within the latter subparagraph's general category of "any other instrument representing an interest in or a claim against property, or a pecuniary interest in or claim against any person or enterprise." RSA 638:1, III(b). The document was a letter informing the defendant that the company had turned off the power to an advertising sign damaged by wind. It created no property interest and independently predicated no claim of title or entitlement in the manner of a check, a stock certificate, or a bond. While the State points out that the defendant employed the letter to support his claim for insurance reimbursement, this

position fails to recognize the distinction between the nature of the document and the nature of the defendant's independent use of that document. There is no serious argument for classifying the letter under RSA 638:1, III(a) or (b); its alteration was necessarily governed under the heading of "other forgery," which is a misdemeanor under RSA 638:1, IV.

██ It does not follow, however, that the indictment was invalid or that counsel should have moved for its dismissal. Although RSA 601:1 provides that felonies must be charged by indictment, there is no statutory prohibition against indicting for a misdemeanor. Despite the virtually universal practice of charging misdemeanors by complaint or information, the common-law practice, which is regarded as constitutionally permissible, allowed misdemeanor charges beyond the jurisdiction of a justice of the peace to be brought by indictment or information. *See State v. Gerry*, 68 N.H. 495, 497, 38 A. 272, 273 (1896). Therefore, although the instant forgery charge could have been commenced by complaint in a district court, no statutory or constitutional right of the defendant was infringed by indicting him in the superior court. And while the superior court could have dismissed the indictment because it charged an offense within the original jurisdiction of a district court to try, the superior court would have had discretion to retain jurisdiction, RSA 592-A:1; *State v. Blouin*, 110 N.H. 202, 263 A.2d 677 (1970), and probably would have done so for reasons of judicial economy, even if the defendant had moved for dismissal of the indictment. It would have been obvious that the evidence to be offered on the attempted theft charge would overlap substantially with evidence of the alleged forgery, and the trial court undoubtedly would have seen the practical sense in trying the two together. We therefore do not interpret the failure of original trial counsel to seek dismissal of the forgery indictment as necessarily the product of professional incompetence. In any event, even if our opinion were otherwise, we would conclude that the defendant had not demonstrated a probability of resulting prejudice, because his sentence on the forgery conviction was not more than a misdemeanor conviction would have authorized.

We are concerned, however, with a closely related issue. While the defendant has not provided us with a transcript of the sentencing hearing, we think it probable, based on the trial court's decree on the motion for new trial, that trial counsel failed to point out during the hearing on sentencing that the forgery offense was merely a misdemeanor. And while the trial judge did not exceed misdemeanor sentencing limits when he sentenced on the forgery

conviction, we recognize that the sentence he imposed could have reflected the view that the offense was a felony, and the same assumption by the court could have influenced the sentence imposed on the companion felony conviction. It is thus possible, though not probable, that the total sentences were heavier than they might have been.

■ We will therefore remand, under our supervisory jurisdiction, for reconsideration of the sentences. If, contrary to our expectation, the record of the sentencing hearing did reflect a realization that the forgery was a misdemeanor, the court need do nothing further. But if there is no such indication, the court should reconsider the sentences. We do not mean to suggest, of course, that they should necessarily be different from the sentences originally imposed; we require only their reconsideration in light of a sound understanding of the degree of seriousness of the forgery offense.

The defendant raises a more serious issue with his second claim of inadequate assistance, counsel's failure to object to instructions that broadened the jury's option to find guilt under the forgery indictment. As we noted above, RSA 638:1, I, provides that forgery is committed when an individual with fraudulent intent makes or alters a document without authority, or employs the document in dealings with another person. Specifically,

> "[a] person is guilty of forgery if, with purpose to defraud anyone, or with knowledge that he is facilitating a fraud to be perpetrated by anyone, he:
>
> (a) Alters any writing of another without his authority or utters any such altered writing; or
>
> (b) Makes, completes, executes, authenticates, issues, transfers, publishes or otherwise utters any writing so that it purports to be the act of another, or purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed."

*Id.* Thus, within the spectrum of possible forgery offenses, different elements are described by the verbs "alters," "utters," "authenticates," and the like. *See* RSA 625:11, IV (defining "material element"). It is clear, therefore, that the charge against the defendant, of forgery by unauthorized alteration of the letter, was materially different from the possible charge of uttering the altered document, or issuing it to another. Consequently, the State had the burden to prove alteration as charged in the indictment, and proof

merely of uttering an altered document would not have been sufficent for conviction.

The trial court did not so limit its charge to the jury, however. The court first gave a pretrial instruction by reading RSA 638:1, I(a) in its entirety, which in effect told the jury that the defendant was guilty if he altered or uttered the document. In the formal charge following the evidence, the court paraphrased or quoted portions of RSA 638:1, I(b), and stated that "the second element [of the forgery charge] is that the defendant made, completed, authenticated, issued, transferred, published, or otherwise uttered any writing, so that it is purported to be a copy of any original when no such original existed."

After the jurors submitted a question asking for clarification, the judge instructed them again as he had done before trial, by reading RSA 638:1, I(a), thus allowing the jury to convict on proof of either altering or uttering. The court then repeated the substance of this instruction before the jury retired to continue deliberations.

In sum, the court instructed the jury four times that it could convict the defendant for uttering rather than altering the letter. (It also instructed the jurors in one instance that they could convict the defendant for making, completing, or authenticating. The defendant does not address these alternatives; nor will we. We suspect that if the jurors remembered these words at all, under the circumstances, they probably took them to refer to further examples of uttering.) There is no question that these instructions were wrong, and that the error would be reversible, if this were a direct appeal. Nor is there any question that competent counsel would have objected to the errors. The silence of defendant's trial counsel can only be treated as a failure to exhibit the reasonable degree of competence that the constitutional standards require.

■ As we noted above, however, *Strickland* and *Faragi* do not entitle the defendant to relief solely on proof that counsel's performance fell below the requisite level. The defendant must also demonstrate a reasonable probability that the outcome of the trial would have been different had it not been for counsel's professional failing, and this burden he has not carried. To show the probability of a different outcome in this case, the defendant would have to demonstrate a probability that the jury convicted him for uttering, but would not have convicted him for altering alone. This is unlikely. The defendant has not pointed to any basis in the evidence for suggesting that he may have uttered the letter but not altered it. The State points out that the defendant, indeed, adopted no strategy of distinguishing between the relative opportunities for

altering and uttering. His strategy consisted, rather, of an attempt to raise reasonable doubt by suggesting that his wife or someone else in his household had committed the forgery, whatever form the forgery may have taken, and there is no reason in the record to conclude that this approach had any more plausibility in reference to altering than it had with respect to uttering. We are therefore unable to infer any probability that a narrower instruction responding to a proper objection would have produced a different verdict.

Our conclusion finds support, moreover, from an unexpected source. When the court instructed the jury on the companion charge of attempted theft by deception, it explained the requirement to prove that the defendant took a "substantial step" toward commission of the substantive offense. *See* RSA 629:1, I and II. The court told the jury that a

> "substantial step means acts by the defendant which strongly supports [sic] the conclusion that the defendant intended to commit the crime of theft by deception. And here, the State claims that the defendant committed the following acts: Altered the disconnect notice, that he transmitted it to the insurance agency, that he pursued the claim through Mr. Evans, the adjuster. . . ."

The court thus described the "substantial step" as "acts" strongly indicating intent, and listed three such acts without any word of disjunction or indication that proof of less than all three would suffice to prove the substantial step. One of the acts was alteration of the notice from the Public Service Company, and the jury was thus instructed that it must find alteration in order to convict of attempted theft. On the customary presumption that the jury followed instructions, *Whipple v. Railroad*, 90 N.H. 261, 267, 7 A.2d 239, 244 (1939), the guilty verdict to the attempted theft charge therefore presupposes a finding that the defendant had made the alteration. Since this implication underscores the improbability that the jury might have found that the defendant uttered what he did not alter, we cannot conclude to a degree of reasonable probability that he was prejudiced by a verdict different from the verdict that would have followed corrected instructions.

■ The third and fourth instances said to exhibit trial counsel's incompetence require only the briefest treatment, for neither gives any support to the defendant. This evidence consisted of references in cross-examination to the contents of two documents prepared by the defendant, giving inconsistent indications of his business in-

come, and to transcripts of two instances of the defendant's prior testimony, giving inconsistent statements about the sources of funds used to buy his business property. The State offered this evidence in response to documents introduced by the defendant, indicating that he had transferred his business assets to his wife and was therefore without any motive to commit the offenses charged against him. The defendant recognized the contents of all the documents and admitted that the transcripts demonstrated that he had lied in one of them. Thus the State's evidence was offered to prove that the defendant had previously been untruthful about a subject that he had himself injected into the trial, and it was admissible in the court's discretion during cross-examination as probative of untruthfulness for the purpose of establishing the defendant's character for untruthfulness on a matter closely related to an issue before the jury. N.H. R. Ev. 608(b)(1). Because the judge overruled defense counsel's objections on grounds of relevance, he would almost certainly have overruled any objection based on Rule 608. Assuming *arguendo* that counsel should have raised the objection anyway, the near certainty that the judge would have overruled it in his lawful discretion precludes any showing of prejudice.

Defense counsel was not negligent, in any case, in failing to move for suppression of the fruits of the search of the defendant's house. The defendant's claim that his trial counsel should have filed a suppression motion begins with the assumption that the magistrate could not have found probable cause for issuing the warrant without relying on the hearsay of an unnamed individual, whom the affidavit described as the original source of the police's information about the defendant's activities. The defendant then argues that there was no probable cause, and the warrant was invalid, because the affidavit failed to set out facts from which the magistrate could have found that the unnamed informer was credible and reliable. Specifically, the defendant submits that his trial counsel should have urged the trial court to apply the two-pronged test of *State v. Mandravelis*, 114 N.H. 634, 325 A.2d 794 (1974) as a State standard for passing on the sufficiency of the foundation for accepting informer evidence. *See State v. Bradberry*, 129 N.H. 68, 82, 522 A.2d 1380, 1388 (1986) (Souter, J., concurring) (applicability of *Mandravelis* under part I, article 19 of the Constitution of New Hampshire is an open question). The defendant would have us conclude that the failure to move for suppression under *Mandravelis* was an example of inadequate representation and a source of prejudice in leaving the way open to introduce the damaging fruits of the search.

The State has responded that the failure to seek suppression, far from amounting to inadequate representation, merely reflected defense counsel's sound perception that the affidavit was sufficient to establish probable cause on the federal totality of the circumstances analysis. *See Illinois v. Gates,* 462 U.S. 213 (1983). The State has urged us to adopt the holding of *Gates* as the rule to be applied under part I, article 19 of the State Constitution whenever probable cause is said to rest on information supplied by an unnamed informant.

Whatever may be the merits of the State's response, however, both the State and the defendant err in addressing an issue that the case simply does not present. Probable cause for the warrant did not rest on the informant's hearsay; it rested on the results of the independent police investigation. The reference to the informant in the affidavit was significant merely as an explanation of how the police happened to begin their investigation of the sequence of events starting with the December 7 letter, and ending with the January insurance claim supported by a letter dated December 19. The results of the police investigation, not the tips from the informant, provided probable cause to believe that the defendant altered a document in order to defraud his insurer.

■ Not only was there no basis to attack the warrant through use of the informer; there was no basis to attack it at all. The affidavit was a good model for what a warrant application should be. It detailed a police investigation that had uncovered the sequence of the power company's notice addressed to the defendant, the purchase of insurance, and the submission of a damage claim accompanied by an altered copy of the power company's letter. From this evidence the magistrate was entitled to infer that the defendant had altered the letter in support of a fraudulent insurance claim. Since the criminal's house is a convenient place to keep the instrumentalities of his crime, *State v. Faragi,* 127 N.H. at 7, 498 A.2d at 727, there was probable cause to search the house for the defendant's copy of the original letter and for the typewriter with which the defendant altered it. There was no reasonable basis to attack the warrant, and trial counsel cannot be faulted for failing to file a frivolous motion to suppress.

*Affirmed and remanded for reconsideration of sentences.*

BATCHELDER, J., did not sit; the others concurred.