Belknap
No. 89-275

THE STATE OF NEW HAMPSHIRE

v.

EDWARD FENNELL, JR.

July 18, 1990

*John P. Arnold*, attorney general (*Jeffrey W. Spencer*, assistant attorney general, on the brief and orally), for the State.

*Nighswander, Martin & Mitchell P.A.*, of Laconia (*Byry D. Kennedy* on the brief and orally), for the defendant.

PER CURIAM. This is an appeal from the Superior Court's (*McHugh*, J.) decision denying defendant's motion to vacate his four aggravated felonious sexual assault convictions and obtain a new trial, based on allegations of ineffective assistance of counsel. We reverse as to one conviction and otherwise affirm.

The defendant was convicted in April 1985 on four counts of aggravated felonious sexual assault in violation of RSA 632-A:2, XI. He appealed his convictions to this court on two grounds challenging, first, the Trial Court's (*Murphy, J.*) denial of his motion for mistrial because of alleged discussions between jurors outside the presence of the remainder of the jury panel and, second, the sufficiency of the evidence regarding one of the counts of aggravated felonious sexual assault. We affirmed each of the four convictions, finding that the court committed no error in denying the mistrial and that the defendant had not properly preserved the insufficiency issue for review. *State v. Fennell,* 128 N.H. 383, 513 A.2d 363 (1986).

In July 1988, the defendant filed a *pro se* motion to vacate his convictions and obtain a new trial, based on allegations of ineffective assistance of trial counsel. The Superior Court (*McHugh, J.*) appointed counsel to represent the defendant and denied the motion after an evidentiary hearing. The defendant now appeals the superior court's findings, claiming that trial counsel's acts and omissions fell below the standard of reasonable competence and denied the defendant effective assistance of counsel guaranteed by the sixth and fourteenth amendments to the United States Constitution, and by part I, article 15 of the New Hampshire Constitution.

[1–3] The standard for attorney performance, whether raised under the United States or New Hampshire Constitution, is that of reasonably effective assistance. *Strickland v. Washington,* 466 U.S. 668, 687, 690, *reh'g denied,* 467 U.S. 1267 (1984); *State v. Faragi,* 127 N.H. 1, 4–5, 498 A.2d 723, 726 (1985). "Reviewing courts start with the strong presumption that counsel's conduct falls within the limits of reasonable practice . . . bearing in mind the limitless variety of strategic and tactical decisions that counsel must make." *Faragi,* 127 N.H. at 4–5, 498 A.2d at 726 (citations omitted). There are two components to a successful claim of ineffective assistance. First, the defendant must show that counsel's performance was deficient, which requires proof that counsel made such egregious errors that counsel was not functioning as the "counsel" guaranteed by both constitutions. *See Strickland,* 466 U.S. at 687. Second, the defendant must prove that counsel's conduct actually prejudiced the defendant such that there is a reasonable probability that the result of the proceeding would have been different had counsel been competent. *Strickland,* 466 U.S. at 687; *Faragi,* 127 N.H. at 5, 498 A.2d at 726.

There are certain circumstances, one of which the defendant alleges here, where the prejudice prong is legally presumed. *See*

*United States v. Cronic,* 466 U.S. 648, 658 (1984); *Avery v. Cunningham, Warden,* 131 N.H. 138, 146, 551 A.2d 952, 956–57 (1988). Prejudice is presumed when there is an actual or constructive denial of counsel because the circumstances "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic,* 466 U.S. at 658–59. One situation that presents a limited application of this presumption is where counsel is burdened by an actual conflict of interest. *See Strickland,* 466 U.S. at 692.

In *Cuyler v. Sullivan,* 446 U.S. 335, 345 (1980), the United States Supreme Court addressed "whether the mere possibility of a conflict of interest warrant[ed] the conclusion that the defendant was deprived of his right to counsel" because of trial counsel's representation of multiple defendants. In answering this question, the court stated that prejudice is presumed when counsel is burdened by an *actual* conflict of interest. *Id.* at 348. Thus in instances where the defendant alleges the existence of a conflict of interest, the defendant must demonstrate "that an *actual* conflict of interest adversely affected his lawyer's performance" and that "his counsel *actively represented* conflicting interests." *Id.* at 348, 350 (emphasis added). In our own decision in *State v. Cyrs,* 129 N.H. 497, 501–02, 529 A.2d 947, 950–51 (1987), we extended the scope of *Cuyler* beyond cases of multiple representation and held that the *Cuyler* standard could be applied to other defendant-attorney conflict of interest cases. In doing so, however, we did not abandon the requirement that there be an *actual* conflict of interest.

The defendant invokes the law of *Cuyler* and *Cyrs* in claiming that he need not prove actual prejudice in order to obtain relief, if he otherwise satisfies us that his attorney's performance fell below the standard of reasonably effective assistance. The alleged conflict in this case arises from the fact that the defendant's trial counsel, Mr. Hemeon, was associated in the practice of law with Philip McLaughlin, who brought a civil suit for negligent operation of a motor vehicle against the defendant, in January of 1984, on behalf of one of his clients. Shortly after the writ was served on the defendant, it was turned over to either the defendant's employer or the insurance carrier, and the matter was ultimately settled.

In April 1984, the defendant called Mr. Hemeon from a police station, having just been arrested in connection with the crimes underlying this case, and requested that Mr. Hemeon represent him. Mr. Hemeon did represent the defendant from May of 1984 through

April of 1985. During this time, the defendant never brought up the civil suit in any of his discussions with Mr. Hemeon. In fact, at no time during the course of Mr. Hemeon's representation did he learn either from the defendant or his law partner of the pendency of the civil action against the defendant. The trial court reviewed the file of the civil suit at the Belknap County Superior Court and noted that none of the documents contained Mr. Hemeon's signature. At the hearing on the defendant's motion, the trial court found that "to the extent that an apparent conflict of interest existed, that conflict was not created *knowingly* by Attorney Hemeon" (emphasis added). The defendant does not deny Mr. Hemeon's lack of knowledge about the civil suit, nor does he claim that trial counsel actively represented conflicting interests. He argues, rather, that Mr. Hemeon should have known about the apparent conflict. What Mr. Hemeon arguably should have known is not, however, the relevant issue. Without an *actual* conflict, no presumption of prejudice arises; consequently, we analyze the defendant's specific allegations of counsel's inadequacy in accordance with the standards enunciated in *Strickland.*

■ The defendant contends that trial counsel was ineffective for the following reasons: (1) he failed to move to dismiss one of the indictments when the evidence at trial purportedly failed to establish penetration; (2) he did not move to sever the four indictments; (3) he did not move for a mistrial when evidence of unindicted acts was elicited from one of the witnesses at trial; (4) he failed to move for a bill of particulars in connection with his alibi defense; and (5) he should have requested a *Howard* hearing to determine the admissibility of evidence of the prior sexual activity of the victims. As to each of these claims, we now proceed to the dual inquiry—whether counsel's performance was deficient and whether the defendant was prejudiced by the performance. *State v. Allegra,* 129 N.H. 720, 723, 533 A.2d 338, 341 (1987). If the defendant is unable to demonstrate the requisite prejudice, "we need not even decide whether counsel's performance fell below the standard of reasonable competence." *Faragi,* 127 N.H. at 4–5, 498 A.2d at 726.

Indictment #84-0098 charged the defendant with committing aggravated felonious sexual assault on the seven-year-old victim while the two were in a parking lot at a McDonald's restaurant. Specifically, the indictment charged that the defendant placed his finger in the victim's genital opening. *See* RSA 632-A:1, V(e). Set forth below is the victim's trial testimony regarding this incident.

"Q. Did Mr. Fennell do something with his finger?

A. Yes.

Q. What did he do?

A. He put his finger in my—trying to find my hole.

Q. And did he find your hole?

A. Yes.

Q. And what did he do when he found it?

A. He goes around it.

Q. He goes around it? And what do you mean he goes around it? I don't know what that means.

A. He goes around it in circles.

Q. And with his finger he went around your hole in circles?

A. Em-hem.

Q. Now, honey, where on your body—just touch what you mean by your hole. I don't mean show us. Just put your hand right on your clothes; can you do that? Show me what you mean by your hole. Where is it on your body?

A. Down here.

Q. Is that your private parts?

A. Em-hem."

The defendant contends that this testimony "at best, established sexual contact," and not penetration, which is a material element of the offense charged. The defendant thus claims that trial counsel erred when he failed to bring a motion to dismiss the indictment for which this testimony was the only evidence. We agree.

Penetration is defined to include "[a]ny intrusion, however slight, of any part of the actor's body or any object manipulated by the actor into the genital or anal openings of the victim's body." RSA 632-A:1, V(e). The victim never testified explicitly that there had been any penetration. She testified about acts of the defendant's hand, but in no way can the victim's statements be reasonably understood as penetration. Although she said at one point, "He put his finger in my —," she never finished the sentence she had begun, and immediately went on to say that he "was trying to find my hole." This indicated that the defendant had not succeeded in penetration. The victim's further words were "he goes around it," from which it would be erroneous to infer penetration.

■■ A motion to dismiss this indictment would have been properly granted, since the evidence, viewed even in the light most favorable to the prosecution, *see State v. Dupuy,* 118 N.H. 848, 850, 395 A.2d 851, 852 (1978), failed to show that the defendant digitally penetrated the victim. The defendant was, therefore, prejudiced by trial counsel's failure to bring such a motion, and the conviction as to this indictment should be vacated and the indictment dismissed. In accordance with *State v. Allegra,* 129 N.H. at 726, 533 A.2d at 342, we also remand the other three convictions so that the trial court may reconsider the sentencing under them in light of the dismissal of the fourth.

The defendant's second claim is that trial counsel should have moved to sever the four indictments. Two of the indictments involved allegations of assault on one victim. Indictment #84-0097 alleged that an assault took place on or about March 1, 1984, at the victim's residence; and indictment #84-0098 alleged that a second assault occurred on or about March 9, 1984, in a McDonald's parking lot. The remaining two indictments involved two other victims alleged to have been assaulted on or about June 18, 1983. The defendant argues that the first set of indictments was totally unrelated to the second set of indictments, that there was minimal overlap of witnesses, and that neither of the second two victims testified with respect to the first victim. The defendant asserts that counsel's failure to move to sever jeopardized his right to a fair trial because he faced three accusers in the same proceeding unnecessarily, and the jury may have "improperly viewed these separate incidents as corroborating one another . . . ."

The record indicates that trial counsel did not bring a motion to sever for strategic reasons. Trial counsel believed that he could use an alibi defense, available for three of the indictments, to undermine the credibility of witnesses testifying on the indictment for which no alibi existed. Furthermore, trial counsel had discussed severance with the defendant, who did not object to a single trial on all four indictments, and with the trial judge, whose sole province it is to determine whether or not to sever or to consolidate cases. *See State v. Manna,* 130 N.H. 306, 310, 539 A.2d 284, 286 (1988). Ultimately, counsel concluded it was strategically more sound to try the indictments together.

■■ As we have previously noted, broad discretion is permitted trial counsel in determining trial strategy, and the defendant must overcome the presumption that counsel's trial strategy was

reasonably adopted. *See Abbott v. Potter,* 125 N.H. 257, 261, 480 A.2d 118, 119–20 (1984). The defendant is unable to show that the failure to move to sever affected the course of the trial. When the crimes charged are related or are apparent parts of a common scheme or plan, *see State v. Whitney,* 125 N.H. 636, 639, 484 A.2d 1158, 1160 (1984), and where the evidence is simple and unlikely to confuse a jury, as was the case here, it is improbable that a trial judge would have granted any severance requested. *See State v. Winders,* 127 N.H. 471, 473, 503 A.2d 798, 799–800 (1985). We find no ineffective assistance here, where there were strategic reasons for not bringing the motion, an improbability of success on the merits of such a motion and, ultimately, no proof of prejudice to the defendant.

The defendant next claims that his trial counsel's performance was deficient when he failed to move for a mistrial after one of the victims testified to an unindicted incident. The second set of indictments alleged that the defendant committed aggravated felonious sexual assault on two eleven-year-old girls in the attic of another girl's home. At the trial, in the course of direct examination of one of the victims, the State attempted to elicit testimony regarding the incident in the attic. The victim, however, began to testify to what may have been a separate incident that occurred in the bathroom. A review of the trial transcript indicates that the State had the intention of inquiring about the incident set forth in the indictment and tailored its questions more narrowly to the attic once it became apparent that the victim was confused and nervous.

The defendant now claims that he was prejudiced by this testimony and that trial counsel should have objected and moved for a mistrial. He relies on *State v. LaBranche,* 118 N.H. 176, 385 A.2d 108 (1978) to support his contention that "there is a reasonable doubt as to whether or not the jury may have relied on this clearly inadmissible evidence in reaching its verdicts and that he has thus been prejudiced by his counsel's failure to raise the issue at trial." The defendant's reliance is misplaced, however, because the cases are factually dissimilar.

In *LaBranche* there were two unmistakable references to a "second" incident in a trial for one charge of aggravated felonious sexual assault. *Id.* at 177–78, 385 A.2d at 110. The instant case presents no such distinct reference. On the contrary, it is not entirely clear from the victim's testimony whether she was talking about the same incident and forgetting where it occurred, or whether she was talking about a separate incident altogether. In any event, trial coun-

sel for the defendant used these inconsistencies in cross-examination to undermine the victim's credibility. We cannot say that counsel's tactic here fell so wide of the mark that his failure to object or to move for mistrial constituted ineffective assistance, let alone that it prejudiced the defendant; again, it was a tactical decision to which we accord appropriate deference.

 The defendant next claims that trial counsel's failure to move for a bill of particulars concerning the dates of the offenses constituted ineffective assistance because the defendant intended to maintain an alibi defense. In the present case, however, each of the indictments alleged a specific date. Although the dates were couched in "on or about" language, there was sufficient information from which the defendant had an opportunity to prepare an alibi defense. Furthermore, "[t]he exact date of the assault is not an element of the aggravated felonious sexual assault crime," *State v. Tynan*, 132 N.H. 461, 464, 566 A.2d 1142, 1143 (1989); *see* RSA 632-A:2, XI; and a motion for bill of particulars, if subject to objection, would almost certainly have been denied. "Where no defense is possible on the basis of the victim's age . . . a defendant generally has no basis for complaining that the indictment fails to allege a precise date, absent a showing that the inexactness raises a possibility of prejudice specific to him." *State v. Lakin*, 128 N.H. 639, 640, 517 A.2d 846, 847 (1986). The defendant makes no such showing; the dates were specific and the evidence at trial established that the assaults occurred on the dates alleged. There is, therefore, no reason to believe counsel's failure to seek a bill of particulars was a deficient act of representation.

 The defendant's final argument is that trial counsel should have requested a *Howard* hearing to determine the admissibility of evidence of the prior sexual activity of the victims. *See State v. Howard*, 121 N.H. 53, 426 A.2d 457 (1981). Although the rape shield law, RSA 632-A:6, mandates the exclusion of evidence regarding a victim's prior consensual sexual activity with any person other than the defendant, the defendant's right to due process and confrontation of witnesses limits the prohibitive sweep of the rape shield statute when the probative value of that evidence outweighs the prejudicial effect of its introduction. *State v. Goulet*, 129 N.H. 348, 351, 529 A.2d 879, 881 (1987).

 In support of his pending motion, the defendant has introduced copies of certain pages from a letter he wrote to trial counsel

describing his largely hearsay basis for believing that the young victims had previously experienced incestuous and other sexual activity. After reading them, we agree that trial counsel should have requested a *Howard* hearing to enquire further, although it is not clear either that a *Howard* hearing was a required predicate for eliciting trial testimony on all of the matters disclosed, or that it would have been prudent to elicit such testimony, assuming the defendant could have done so. On the one hand, some of the acts described, if they occurred at all, would probably not have been consensual; on the other hand, emphasis on repeated sexual abuse of the victims, even by others, could have created a degree of sympathy that could have jeopardized the jurors' impartiality. But at the least, the information supplied by the defendant to trial counsel, if repeated in support of an application for a hearing under *Howard, see State v. Baker,* 127 N.H. 801, 804, 508 A.2d 1059, 1062 (1986), and if substantiated, could have established the defendant's right to overcome the shield law's prohibition with such evidence as might be necessary to counter any suggestion or appearance of sexual naivete on the part of the victims. *See State v. Howard supra.*

The defendant still must show prejudice, however, from the failure to introduce such evidence as might have been prohibited under the law, in the absence of a *Howard* hearing. He has failed to do this. As we noted, some of the possible evidence was probably not subject to the shield law or a corresponding *Howard* hearing. The need for any evidence of prior sexual activity, moreover, may have been lacking if, as the State maintains, the victims were portrayed at trial as sexually experienced. The defendant does not in fact take any issue with this characterization of the evidence, or even argue that there is any reasonable probability that evidence of sexual experience would have affected any of the verdicts. There was no basis to infer prejudice on this point.

In sum, we find that the defendant was prejudiced and that counsel's representation fell below the standard of effective assistance only with respect to the defendant's first claim of error. As to each subsequent claim, the defendant has failed to satisfy the *Strickland* standard.

*Reversed in part; affirmed in part; remanded.*

HORTON, J., did not sit.