Hillsborough
No. 90-410

## THE STATE OF NEW HAMPSHIRE

v.

## FRED CHASE

December 31, 1991

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, on the brief and orally), for the State.

*Scott F. Innes*, of Manchester, by brief and orally, for the defendant.

BATCHELDER, J.  The defendant appeals from the denial by the Superior Court (*Murphy*, J.) of his motion for a new trial on the ground of ineffective assistance of counsel. Finding no error, we affirm.

The defendant was convicted of three counts of aggravated felonious sexual assault, RSA 632-A:2, X-a, and two counts of felonious sexual assault, RSA 632-A:3. All of the assaults were committed on Holly A. while she, her mother and two sisters were living with the defendant and his family. The aggravated felonious sexual assaults

were alleged to have been committed by the defendant through coercion by virtue of his position of authority as head of the household.

The first two incidents, the bases for the charges of felonious sexual assault, occurred in 1986, when Holly was fifteen years old. One day she was instructed by the defendant to stay home from school to baby-sit for his three-year-old child. At his request, Holly made him breakfast and joined him in his bedroom to watch television. He then told her to lock the door, sit next to him on the bed and perform fellatio. After she complied, he had sexual intercourse with her.

Two years later three more incidents occurred. On a morning in August 1988, the defendant told the children to go outside. Holly's sister took the other four children to a nearby park, leaving Holly home alone with the defendant. He told Holly to lock the doors and join him in his bedroom, where he performed anal intercourse with her. Later that month the defendant told Holly to start doing laundry late one night and then had her perform fellatio in the laundry room. One night several weeks later, after everyone else was in bed, the defendant took Holly to his stepson Carl's attic bedroom to play the guitar for her. After telling Carl to leave, the defendant took Holly into an adjoining storage area and had sexual intercourse with her.

Following his conviction, the defendant moved for a new trial, claiming ineffective assistance of counsel. He argued in superior court, as he does here, that his trial lawyer failed to interview certain witnesses and call them to testify, failed to fully examine the witnesses he did call, failed to preserve the record with respect to two unrecorded bench conferences, and inadequately cross-examined the victim. An evidentiary hearing was held on the defendant's motion, at which four trial witnesses and two witnesses not produced at trial testified, in addition to defendant's trial counsel. Upon hearing the evidence, and after reviewing the trial transcripts, the motion judge held that the defendant had not demonstrated that he had been prejudiced by counsel's purported omissions and denied the motion.

■ The standard for measuring attorney performance, under the right to counsel provisions of both the Federal and State Constitutions, is one of reasonably effective assistance. *State v. Fennell*, 133 N.H. 402, 405, 578 A.2d 329, 331 (1990). Because the defendant rests his claim on both constitutions, we address it independently under the State Constitution, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), although, as the two standards are identical, "the analysis and result is the same under each constitution," *State v. Glidden*, 127 N.H. 359, 361, 499 A.2d 1349, 1350 (1985).

In considering an ineffectiveness claim, we "'start with the strong presumption that counsel's conduct falls within the limits of reasonable practice . . . bearing in mind the limitless variety of strategic and tactical decisions that counsel must make.'" *Fennell, supra* at 405, 578 A.2d at 331 (quoting *State v. Faragi,* 127 N.H. 1, 4–5, 498 A.2d 723, 726 (1985) (citations omitted)). To prevail on a claim of ineffective assistance, the defendant must show both that counsel's performance was deficient and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694 (1984). Less than competent attorney performance, therefore, must actually result in prejudice to the defendant for an ineffectiveness claim to succeed; "[i]f the defendant is unable to demonstrate such prejudice, we need not even decide whether counsel's performance fell below the standard of reasonable competence." *State v. Faragi, supra* at 5, 498 A.2d at 726 (citing *Strickland v. Washington supra*).

Before turning to the merits of the defendant's claim, we address his arguments that the motion judge erred in his application of the law. First, he contends that the court employed an incorrect test for determining prejudice. Although in the course of its order the court stated the two-pronged *Strickland v. Washington* test, as set forth above, it concluded by stating "that defendant has failed to demonstrate a reasonable probability that he would have been *acquitted* had the evidence and testimony introduced at the evidentiary hearing before me been submitted to the jury." (Emphasis added.) According to the defendant, because *Strickland* and *Fennell* require only a probability that the "*result* of the proceeding" would have been different in order to show prejudice, he would be entitled to a new trial if he could show a reasonable likelihood of a mistrial based on a hung jury. Thus reading "result" not to be equivalent to "verdict," he argues that he should prevail if the additional evidence would have persuaded only one juror to acquit, and that he need not persuade all twelve.

We believe the defendant reads too much into the *Strickland* Court's use of the term "result of the proceeding." *Strickland* involved review not of a criminal conviction but of a capital sentencing proceeding, "which is sufficiently like a trial in its adversarial format and in the existence of standards for decision . . . that counsel's role in the proceeding is comparable to counsel's role at trial. . . ." *Strickland, supra* at 686–87 (citation omitted). Because the standard for

ineffective assistance was therefore intended to apply to more than one type of proceeding, the generic term was obviously chosen deliberately. Moreover, in reviewing alleged ineffective assistance at a criminal trial, the United States Supreme Court has stated that a defendant must prove that "there is a reasonable probability that the *verdict* would have been different . . . in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (emphasis added); *see also State v. Allegra*, 129 N.H. 720, 728, 533 A.2d 338, 344 (1987) (to find ineffectiveness, court must be satisfied "to a degree of reasonable probability that [the defendant] was prejudiced by a verdict different from the verdict that would have followed [absent attorney error]"). Because a "verdict" in a criminal case can only be an acquittal or a conviction, *see* BLACK'S LAW DICTIONARY 1559 (6th ed. 1990) (formal decision or finding made by jury, verdict in criminal cases must be unanimous), the motion judge did not err.

The defendant also asserts that where the judge hearing a motion for a new trial based on alleged ineffective assistance is different from the judge who presided at trial, the prejudice prong need not be established. Nothing in the record on appeal indicates that this argument was made below. It is therefore not properly before this court. *See State v. Gruber*, 132 N.H. 83, 562 A.2d 156 (1989).

■   Finally, regarding the superior court's application of the legal standards, the defendant complains that the court improperly examined separately each new piece of evidence adduced at the hearing to determine whether the defendant had been prejudiced by its absence at trial. To the contrary, the order on the motion for a new trial indicates that, after considering the materiality of the additional evidence offered by the witnesses and their credibility, the court concluded, based on the totality of the evidence, that the defendant had not shown a reasonable probability of a different result at trial in the absence of counsel's alleged errors. Reaching this conclusion by "independent analysis of each claimed error provided for a thorough and complete inquiry into the fairness of the proceeding." *Avery v. Cunningham*, 131 N.H. 138, 150, 551 A.2d 952, 959 (1988).

At the hearing on the motion for a new trial, defendant's trial counsel testified regarding his trial preparation and strategy. He characterized the case as turning on the credibility of the victim, stating that his theory of defense was that Holly had lied about the sexual assaults in order to be able to escape an unhappy and strict home environment and live with her boyfriend.

The trial transcript indicates defense counsel's efforts to impeach Holly's credibility. He examined her about changes in her successive

police statements, including her having originally confused the incidents of vaginal and anal intercourse and not telling the police initially about several of the alleged assaults. He brought out her history of lying, especially in order to be with her boyfriend, Todd, whom she was not allowed to see. Key to the defense theory was the timing of Holly's revelation about the assaults. She stated on cross-examination that when, as a runaway, she spoke to a social worker in an attempt to remain out of the house, she told the worker that the defendant kept cocaine in the house, that the household was often without heat or hot water, and that the children suffered mental and physical abuse. Even though some of the alleged sexual assaults had recently occurred, however, and Holly had "wanted to tell [the social worker] everything that was going on in the house," she admitted that she had failed to report any sexual assaults at that time. She believed, after her conversation with the social worker had ended, that she would be forced to remain home until she was eighteen. Several months later she revealed the assaults to her boyfriend, Todd, and, within a week, she was permitted to move in with him and his family.

Through direct examination of Todd, defense counsel elicited that Todd and Holly had discussed her desire to leave home. According to Todd, when Holly told him about the sexual abuse she stated in effect that she had "found a way," which Todd understood to mean that she had "found a way to get out of there and make [her] life better, you know, maybe." During his closing argument defense counsel tied Holly's and Todd's testimony together to emphasize his theory of defense, i.e., that Holly, knowing she could not legally leave home on the strength of the information she had already provided to the authorities, came up with "a way" by fabricating allegations of sexual assault.

The defendant claims, among other things, that trial counsel did not adequately examine four witnesses called to testify in his behalf at trial. The witnesses—the defendant's sister, his wife, and two friends—testified concerning their observations of Holly's relationships with the defendant and the other adults in the house. In an apparent attempt to undermine Holly's testimony that she was chiefly disciplined by and under the domination of the defendant, defense counsel elicited from them their observations that Holly's mother and the defendant's wife disciplined the children. Additionally, they testified that Holly's mother lost her temper and often yelled at Holly, supporting the defense theory that Holly's allega-

tions were motivated by a desire to leave an unhappy environment not solely created by the defendant.

■ Testifying at the hearing on the defendant's motion for a new trial, these four witnesses offered nothing substantial in addition to their trial testimony, adding only cumulative or irrelevant details, some of which were consistent with Holly's and her mother's trial testimony. The superior court ruled that the witnesses' new testimony "amply demonstrated that what they knew in addition to that which they testified [at trial] was neither necessarily helpful to the defense or, in some instances, relevant." We agree that, as the additional testimony would not have served to damage the victim's credibility, the defendant has not shown that he was prejudiced by its absence.

■■ With respect to the defendant's claim that counsel was ineffective in failing to interview or produce two other putative defense witnesses, we also agree with the motion judge, who, after hearing the witnesses, found that "[t]heir testimony was likewise neither necessarily helpful nor credible because of their relationship with the defendant and because of the apparent inconsistencies in their own testimony." Testifying about the 1988 incident, when the children were taken to the park, Tanya and Carl Lind, the defendant's stepchildren, did not offer testimony that materially conflicted with Holly's; they did, however, contradict each other. With respect to the attic incident, although Carl testified that he was never asked by the defendant to leave the room so that he could be alone with Holly, the court expressly found the witnesses not credible. We will not overturn the credibility ruling of the factfinder, who is in the best position to make such a determination, and agree with the court below that the defendant has not demonstrated a reasonable likelihood that counsel's failure to call these witnesses affected the outcome of his trial.

■ ■ The defendant also claims attorney error in his trial counsel's failure to preserve a record of two bench conferences. He does not argue that he was prejudiced by this omission, but claims instead that it constitutes ineffective assistance *per se*, requiring no showing of prejudice. Although narrow circumstances exist in which counsel's ineffectiveness may give rise to a presumption of prejudice, such as an actual conflict of interest, *see Strickland*, 466 U.S. at 692, generally "prejudice is presumed only 'where circumstances leading to counsel's ineffectiveness are so egregious that the defendant was

in effect denied any meaningful assistance at all . . . .'" *Humphrey v. Cunningham, Warden*, 133 N.H. 727, 737, 584 A.2d 763, 769 (1990) (citations omitted). In such cases the presumption is warranted because prejudice is so likely that a case-by-case inquiry is not worth the cost of litigation. *Strickland supra; State v. Fennell*, 133 N.H. at 406, 578 A.2d at 331. The failure here to have the bench conferences recorded does not meet this test. From our review of the trial transcript it appears that these conferences relate to counsel's attempt to introduce a letter written by the victim's boyfriend to her. The first conference occurred during Holly's cross-examination, after defense counsel was about to show her the letter. The second, occurring during Todd's testimony, was apparently for the purpose of affording the prosecutor the opportunity to compare the letter to his own copy. The defendant does not argue, and we are unable to see, why he should be relieved of the burden to demonstrate actual prejudice from the absence of a record of these bench conferences.

Moreover, Todd testified at trial about the letter's contents, and the defendant did not offer it at the motion hearing. Neither did the defendant inquire of trial counsel at the motion hearing whether he recalled what had occurred at the bench. We conclude that the defendant has failed to show how his attorney's failure to have the bench conferences recorded prejudiced him. As the defendant has failed to show that he was actually prejudiced by the above three alleged errors, we need not decide whether trial counsel's performance was less than reasonably competent. *State v. Faragi*, 127 N.H. at 5, 498 A.2d at 726.

The defendant's final claim of attorney error is that trial counsel inadequately cross-examined the victim about inconsistencies between her testimony and statements she had given to the police. Although he contends that counsel's purported failure in this regard was not a matter of trial strategy, counsel's testimony at the motion hearing reveals otherwise. Asked whether he had made a tactical decision not to attempt to impeach the victim, counsel answered that he had not. Rather, he noted, he had made substantial inquiry about her lying on numerous occasions, bringing out material inconsistencies in her various versions of the assaults. Both the victim's cross-examination testimony and defense counsel's closing argument disclose a plausible theory of defense; this was manifestly the product of tactical judgment, which we will not second-guess. *State v. Glidden*, 127 N.H. at 362, 499 A.2d at 1351. Moreover, having re-

viewed the entire record and compared the victim's various statements, we find that any additional inconsistencies not elicited on cross-examination were not material to her allegations of sexual assault. The defendant has failed to satisfy either prong of the *Strickland* standard.

In sum, the defendant has not shown that he was deprived of effective assistance of counsel at trial. His motion for a new trial was properly denied.

*Affirmed.*

All concurred.