NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
Case No. 2021-0310
Citation: State v. Rouleau, 2024 N.H. 2

THE STATE OF NEW HAMPSHIRE

v.

TIMMY J. ROULEAU

Argued: September 14, 2023
Opinion Issued: January 19, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Elizabeth C. Woodcock, senior assistant attorney general, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

MACDONALD, C.J.

[¶1] The defendant, Timmy J. Rouleau, appeals his convictions, following a jury trial in Superior Court (Howard, J.), on two counts of pattern aggravated felonious sexual assault (AFSA), see RSA 632-A:1, I-c (2016), one count of

AFSA, see RSA 632-A:2, I(j)(1) (2016 & Supp. 2022), one count of attempted AFSA, see RSA 632-A:2, I(j)(1); RSA 629:1 (2016), two counts of felonious sexual assault, see RSA 632-A:3, III(a)(1) (2016 & Supp. 2022), and two counts of sexual assault, see RSA 632-A:4, I(b) (2016 & Supp. 2022). The charges allege that the defendant sexually assaulted the victim several times when she was between the ages of ten and thirteen. At issue in this appeal is the trial court's admission of evidence about an Amazon "wish list" containing sexually oriented items. The defendant argues that the trial court erred in admitting the evidence because it was not intrinsic to the charged crimes. The State counters that the evidence was intrinsic to the charged crimes but that, if the trial court erred, any error in the admission of the evidence was harmless. We conclude that the evidence was not intrinsic, and thus was admitted in error, but the error was harmless beyond a reasonable doubt. Therefore, we affirm.

I

[¶2] The jury could have found or the record otherwise supports the following facts. The victim was born in June 2005 and has three younger half-siblings on her mother's side. The defendant is not the victim's father. In early 2016, the victim's mother was in a relationship with the defendant. In March 2016, when the victim was ten years old and in fifth grade, the victim's mother and her children moved to an apartment building in another town in order to be closer to the defendant. The defendant lived in the same building on the same floor in another unit. The victim and her family primarily spent time at the defendant's apartment during this period.

[¶3] Approximately one to two months after moving, the victim was asked by the defendant to cuddle with him on the living room couch. At the time, no one else was present in the room. While cuddling, the defendant put his hand under the victim's shirt, touching her breasts. The defendant then moved his hand into her shorts, inside her underwear, and digitally penetrated her vagina. The same assaults subsequently occurred "quite frequently." At first, the assaults occurred "almost every day." Later, they would occur between "every day" and "every other day," when others in the household were absent. The victim estimated that the assaults occurred "a few hundred" times. The victim testified that the assaults always occurred around the same time of day, in the late afternoon after she arrived home from school and before the defendant would leave for work.

[¶4] The victim recalled two specific incidents that varied from the rest. The first occurred in late 2016 when she stayed home sick from school and the defendant suggested they watch Netflix in his bed. Once in bed, the defendant began assaulting the victim as he had on previous occasions. The defendant then lifted the victim's shirt and put his mouth on her breasts. The defendant also grabbed the victim's wrist and "moved [her] hand up and down on his penis." The second incident occurred in sixth or seventh grade when, while

2

digitally penetrating the victim's vagina, the defendant asked the victim if she liked what he was doing to her. She replied that she did not, but he "didn't stop." The victim testified that this incident was noteworthy as it was "out of character" for the defendant to say something while assaulting her.

[¶5] The assaults stopped sometime during seventh grade when the victim began isolating herself from the defendant by staying in her room, staying after school for activities, and spending time with friends outside the apartment. During this period, the victim's mother noticed that the victim became more withdrawn and spent more time in her bedroom. The victim did not want to be home if her mother was not present. If the victim's mother went somewhere, the victim would want to go with her, which upset the defendant. The victim testified that during this period, the defendant frequently asked her to join him on the couch and she rejected his offers. The defendant got upset at the rejections and tried to make the victim feel guilty.

[¶6] In November 2017, the victim's family and the defendant moved into a three-bedroom apartment together. The victim testified that after this move, no abuse occurred at the apartment until the morning of April 3, 2019.

[¶7] On April 3, 2019, at around 2:00 a.m., the victim arrived home with her mother, returning from a school trip. The defendant was sleeping on the couch in the living room. Because the victim was exhausted and her bed had folded laundry on it, the victim's mother told the victim "to come sleep in my room with me." The victim fell asleep in her clothes with her mother in her mother's bed.

[¶8] The victim awoke to the defendant being in the bed and holding her from behind. The defendant touched her breasts and digitally penetrated her vagina. The victim attempted to get her mother's attention but was unable to do so. The defendant moved the victim's shorts and put his penis between her legs, moving it back and forth. The victim testified that "[i]t felt like he was trying to put it into my vagina," "it felt like the tip of the penis had gone in, but not the whole thing," and "it hurt" while it was happening. The victim estimated that the assault went on for twenty or thirty minutes until she began crying and her mother awoke. The defendant turned over "as if nothing was happening." The victim's mother brought the victim downstairs and asked her what happened. The victim's mother testified that the victim told her "that [the defendant] had touched her boob, and that his penis was in between her legs." The victim's mother testified that the victim was very upset while describing what the defendant had done.

[¶9] The victim's mother returned back to her room and confronted the defendant with what the victim had told her. She asked him what had happened and he said "he didn't remember," "[h]e didn't know, and that he wouldn't do anything to hurt the kids."

[¶10] The trial court conducted a two-day jury trial in June 2021. At trial, the victim and the victim's mother, among others, testified for the State. The defendant testified in his own defense, denying the allegations. The jury returned verdicts of guilty on all counts. This appeal followed.

II

[¶11] The challenged testimony occurred during the victim's direct examination on the first day of trial. After the victim testified about the abuse that transpired beginning in the spring of 2016, the State asked whether there were "other times during this timeframe when [the defendant] would make any kind of sexual reference to you?" Defense counsel asked to approach the bench. At the bench, defense counsel noted that the State had not filed a pretrial motion in limine seeking to introduce evidence under New Hampshire Rule of Evidence 404(b) and asked for a proffer of what the State intended to elicit. The State proffered that the victim would describe that the defendant had given her an Amazon wish list and asked her to rank the items, including sexually oriented items, and that "[i]t happened in the midst of this timeframe." The State argued that the evidence was "intrinsic to the sexual assault." The State argued that it was more probative than prejudicial "because it [went] to the fact that the defendant had a sexual relationship with [the victim] and was making these kinds of sexual references to her even when he wasn't molesting her, and it's no more prejudicial than pretty much any of the other things that we've gone into thus far." The defendant argued that the wish list evidence "seem[ed] like . . . a grooming-type behavior" that "squarely" fell under Rule 404(b) and that it was "highly prejudicial." The trial court overruled the defendant's objection, finding that the evidence was not Rule 404(b) evidence and that it "[was] intrinsic, and it [was] inextricably intertwined with" the charged conduct.

[¶12] The victim then testified that when she and her siblings made their Christmas lists, she would have to use an Amazon wish list rather than write out what she wanted like the other children. The defendant added items to the list for her to sort through to determine if she wanted them. Many of the items added by the defendant were sexually oriented, including sex toys, lingerie, a chocolate lollipop in the shape of a penis, and other similar items. She was not allowed to delete any of the items from the list and instead had to rank them by her preference. The victim testified that she was particularly scared that the defendant would purchase the lollipop for either Christmas or her birthday, though he did not. The victim did not say when the list was created or discussed.

[¶13] On appeal, the defendant argues that the trial court erred in admitting the evidence because it was not intrinsic to the charged crimes. We review the trial court's ruling on the admissibility of evidence for an unsustainable exercise of discretion, and will reverse only if it was clearly

4

untenable or unreasonable to the prejudice of the defendant's case.  State v. Papillon, 173 N.H. 13, 24 (2020).  In applying our unsustainable exercise of discretion standard of review, we determine only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made.  State v. Letarte, 169 N.H. 455, 461 (2016).

[¶14] The proper test to apply in deciding the admissibility of "similar acts" or "other acts" evidence depends upon whether the evidence in question is "intrinsic" or "extrinsic" evidence.  Papillon, 173 N.H. at 24 (quotations omitted).  Rule 404(b)(1) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  N.H. R. Ev. 404(b)(1).  The rule, by its very terms, excludes only extrinsic evidence — evidence of other crimes, wrongs, or acts — whose probative value exclusively depends upon a forbidden inference of criminal propensity.  Papillon, 173 N.H. at 24.

[¶15] "Other act" evidence is "intrinsic," and therefore not subject to Rule 404(b), when the evidence of the other act and the evidence of the crime charged are "inextricably intertwined," both acts are part of a "single criminal episode," or the other acts were "necessary preliminaries" to the crime charged.  Id. at 24-25 (quotations omitted).  "Intrinsic" or "inextricably intertwined" evidence will have a causal, temporal, or spatial connection with the charged crime.  Id. at 25 (quotations omitted).  Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.  Id.  This type of evidence is admissible under the rationale that events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of the charged act so that it may realistically evaluate the evidence.  Id.

[¶16] Because the trial court made its ruling at the bench conference, we consider only the evidence presented until that point in the trial as well as the State's proffer.  We so limit our review to avoid the pitfall of justifying the court's ruling upon the defendant's response at trial to the evidence.  See State v. Nightingale, 160 N.H. 569, 573 (2010).

[¶17] We conclude that any connection between the wish list evidence and the charged offenses is too attenuated to render the evidence intrinsic to the charged offenses.  See Papillon, 173 N.H. at 25.  There was no evidence before the trial court that the wish list was connected to the commission of the charged acts.  The victim did not mention the wish list evidence when she testified about the assaults.  At the bench conference, the State did not articulate a specific connection between the evidence and the charged assaults.

5

Therefore, the evidence was not inextricably intertwined with the charged crimes and was not part of a single criminal episode. Cf. State v. Wells, 166 N.H. 73, 78 (2014) (reasoning that the challenged testimony "described an act that was inextricably intertwined with the charged offense because the acts were 'part of a single criminal episode,'" and the evidence "was necessary to complete the story of the charged sexual intercourse" (citation omitted)); Nightingale, 160 N.H. at 574 (emphasizing that the challenged conversations and the charged offense were "part of a single criminal episode" in concluding that Rule 404(b) did not apply (quotations and emphasis omitted)). The evidence was not necessary to complete the story of the defendant's sexual assaults. See Papillon, 173 N.H. at 25. Prior to the challenged testimony, the victim had already completed her testimony about the abuse that took place between March 2016 and November 2017. Further, the wish list evidence was not directly probative of the charged assaults as it shed no light on whether the assaults occurred. See id.

[¶18] Although evidence that "forms an integral part of a witness's testimony" about the charged offenses may also suggest that the evidence is intrinsic to the charged crimes, here the wish list evidence falls short of forming an integral part of the victim's testimony that the defendant sexually assaulted her. See id. at 26 (quotation omitted). We are not persuaded that excluding it would render the victim's testimony regarding the charged crimes unintelligible or create a vacuum in the story. See id. The evidence was not necessary or essential to enable the jury to "realistically evaluate her testimony" about the charged crimes. See id. (quotation omitted).

[¶19] In analyzing the applicability of the intrinsic evidence exception to Rule 404(b), we remain mindful of the purpose of Rule 404(b), which is to "ensure that the defendant is tried on the merits of the crime as charged and to prevent a conviction based upon evidence of other crimes or wrongs." Id. at 28 (quotation omitted). The intrinsic evidence exception cannot serve as a backdoor to circumvent this purpose. Id. Here, in deciding whether to convict the defendant for sexually assaulting the victim, the jury was permitted to consider evidence that the defendant created an Amazon wish list with sexually oriented items and required the victim to review and rank the list. Because this evidence of other acts was not intrinsic to the charged offenses, and thus not an exception to Rule 404(b), Rule 404(b) governs the evidence's admissibility, and therefore we determine that the trial court unsustainably exercised its discretion in concluding otherwise. See id. Nonetheless, we agree with the State that any error in admitting the evidence was harmless beyond a reasonable doubt.

[¶20] To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdict. State v. Boudreau, 176 N.H. 1, 11 (2023). This standard applies to both the erroneous admission and exclusion of evidence. Id. We consider the alternative evidence presented

6

at trial as well as the character of the erroneously admitted evidence itself. Id. To determine whether the State has proven beyond a reasonable doubt that an error did not affect the verdict, we must evaluate the totality of the circumstances at trial. Id. at 11-12.

[¶21] The factors that we consider in assessing whether an error did not affect the verdict include, but are not limited to: (1) the strength of the State's case; (2) whether the admitted or excluded evidence is cumulative or inconsequential in relation to the strength of the State's case; (3) the frequency of the error; (4) the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; (5) the nature of the defense; (6) the circumstances in which the evidence was introduced at trial; (7) whether the court took any curative steps; (8) whether the evidence is of an inflammatory nature; and (9) whether the other evidence of the defendant's guilt is of an overwhelming nature. Id. at 12. No one factor is dispositive. Id. We may consider factors not listed above, and not all factors may be implicated in a given case. Id.

[¶22] Here, the other evidence of the defendant's guilt was overwhelming. As set forth above, the victim provided direct testimony of the defendant's repeated sexual assaults spanning approximately nineteen months, including detailed testimony about two particular assaults that occurred during that period, as well as a thorough account of the final assault that prompted the investigation. See RSA 632-A:6, I (2016) ("The testimony of the victim shall not be required to be corroborated in prosecutions under this chapter."). Further, the victim's mother corroborated aspects of the victim's testimony, including observing that the victim began avoiding the defendant beginning at age twelve or thirteen. She also provided an account of the events immediately following the April 3 assault.

[¶23] To be sure, the wish list evidence may have suggested to the jury that the defendant was more likely to have engaged in sex-related misconduct. But, the most damaging evidence against the defendant was the victim's detailed descriptions of the assaults. See State v. Lemieux, 136 N.H. 329, 331-32 (1992) (explaining that "the evidence most damaging to the defendant was the victim's description, in vivid detail, of the various sexual acts that the defendant forced her to perform on a regular basis"); see also State v. Anctil, 134 N.H. 623, 626 (1991) (reasoning that "the testimony that was most damning to the defendant was [the victim's] descriptive account of the sexual assaults"); State v. Thibedau, 142 N.H. 325, 329 (1997) (finding other evidence overwhelming in part because it "includes the victim's detailed testimony of the assault, including what she was wearing, what the defendant said, and how the defendant perpetrated the assault"). Further, the State's case was not based on circumstantial evidence; instead, it was based on direct evidence from the victim's testimony. Cf. State v. Woodbury, 124 N.H. 218, 222 (1983)

(finding no harmless error where inadmissible statements were admitted and the other evidence in the case was circumstantial).

[¶24] In addition, at no point during its cross-examination of the victim did the defense impeach the victim's credibility with prior inconsistent statements related to the charges. See Boudreau, 176 N.H. at 13 ("At no point during its cross-examination of the victims did the defense impeach the victims' credibility with prior inconsistent statements related to the alleged AFSA charges."); cf. State v. Reynolds, 136 N.H. 325, 329 (1992) ("Given that the case was ultimately and essentially a credibility contest between the victim and the defendant, and that the victim's credibility had been attacked by the defense with some success, we are not convinced beyond a reasonable doubt that the erroneously admitted lay testimony did not influence the jury's determination to believe the victim over the defendant.").

[¶25] In contrast, the State impeached the defendant on a few occasions during its cross-examination of the defendant. During his direct testimony, the defendant maintained that despite having a drink of bourbon, he was not intoxicated on the night of April 2, 2019. On cross-examination, however, the defendant admitted that, in addition to the bourbon, he had also taken a sleeping pill and a tramadol pain pill before sleeping that night. The State confronted the defendant with a recorded statement he made to police where he stated that on the morning of April 3, 2019, he awoke to the victim's mother screaming at him "and I'm like, I'm still freaking drugged out of my head from the freaking tramadol." Further, the State later confronted the defendant with another recorded statement to police where he said, "tramadol makes you lose consciousness. Makes you dizzy. You don't know what the hell's going on. You can actually sleepwalk." The defendant responded that he did not "recall saying that whatsoever, to be honest." When confronted with the transcript, the defendant testified, "[t]hat's something I would not say." The jury could have found that these instances of impeachment damaged the defendant's credibility, calling into question his testimony denying that the charged conduct occurred. Against this record, the admission of the wish list evidence was of little consequence. See Boudreau, 176 N.H. at 13.

[¶26] There are additional reasons to believe the error in this case was harmless beyond a reasonable doubt. First, the wish list evidence comprised a small portion of the victim's testimony and was not mentioned in the State's closing argument. Put another way, the evidence was not "lengthy, comprehensive, or directly linked to a determination of the guilt or innocence of the defendant." Thibedau, 142 N.H. at 330 (quotation omitted). Second, the evidence did not work to directly bolster the victim's credibility. See Lemieux, 136 N.H. at 331 (reasoning that the challenged testimony "was not directed to a specific inconsistency in the victim's testimony in an effort to explain it"). Third, the evidence was not used to corroborate the victim's testimony regarding the charged conduct. Cf. State v. Cooper, 168 N.H. 161, 167 (2015)

8

(finding harmless error where, although the challenged evidence corroborated a key witness's testimony, other evidence in the case also corroborated the testimony).  Finally, while the wish list evidence is, as defense counsel described it at oral argument, "unique and odd," we cannot say that it is inflammatory.  Cf. State v. Whittaker, 138 N.H. 524, 530 (1994) (holding that erroneously admitting "graphic" testimony that the defendant committed a "brutal and sadistic assault" to be error that was not harmless); State v. Richardson, 138 N.H. 162, 169 (1993) ("[T]he defendant's graphic boasting about killing a police officer was so inflammatory that we cannot say beyond a reasonable doubt that it had no effect on the jury's verdict.").  Therefore, we hold that, based upon the totality of the circumstances, the trial court's error in admitting the wish list evidence did not affect the verdicts and thus was harmless beyond a reasonable doubt.  See Boudreau, 176 N.H. at 14.

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.