NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Hillsborough-northern judicial district
Case No. 2022-0616
Citation: State v. Van Uden, 2024 N.H. 47

THE STATE OF NEW HAMPSHIRE

v.

THOMAS VAN UDEN

Argued: November 29, 2023
Opinion Issued: August 29, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Audriana Mekula, assistant attorney general, on the brief and orally), for the State.

Pamela E. Phelan, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

MACDONALD, C.J.

[¶1] The defendant, Thomas Van Uden, appeals his convictions following a jury trial in Superior Court (Messer, J.) on five counts of reckless conduct with a deadly weapon, see RSA 631:3, I, II (2016 & Supp. 2023); RSA 625:11, V

(2016). He argues that the trial court erred when it: (1) admitted testimony from lay witnesses about his alleged opioid use; (2) allowed the State to use evidence of his purported opioid use for an improper purpose during its closing argument; and (3) denied his motion to merge the five reckless conduct charges into one charge for sentencing. We affirm in part, reverse in part, and remand.

I. Background

[¶2] The jury could have found the following facts. During the afternoon of August 2, 2021, the defendant drove through a red light at a high rate of speed at a Manchester intersection. As he tried to drive in between two lanes of vehicles, he hit three vehicles. One vehicle was hit so hard that it was pushed into the center of the intersection. After striking the vehicles, the defendant's car went through the intersection. The defendant then "yanked" his steering wheel, his car hit the median, and flipped over in the air, landing on top of another vehicle which was stopped on the opposite side of the intersection. That vehicle then slid into the vehicle next to it. The defendant's vehicle landed on its side and rolled onto its roof. The cars hit by the defendant were damaged; some were total losses.

[¶3] A paramedic arrived at the scene to find the defendant, who had been partially ejected from his car, unconscious. She began treating the defendant and observed that he was pale, sweaty, and cool to the touch. She also observed that the defendant's pupils were pinpointed, and she administered 0.5 grams of Narcan intravenously.

[¶4] The defendant was transported to the hospital by ambulance. A Manchester police officer who spoke with the defendant at the hospital testified at trial that while they spoke, the defendant used "[m]ostly one-word answers," was lethargic, and had slurred speech. The officer also observed that the defendant's pupils were pinpointed, which the officer said he understood, based on his training and experience, to be a side effect of being under the influence of opioids.

[¶5] The defendant was charged with one count of second degree assault with serious bodily injury, seven counts of reckless conduct with a deadly weapon, one count of driving under the influence of drugs or alcohol, and one count of disobeying a police officer. Prior to trial, the defendant moved to exclude testimony from two witnesses. The defendant argued that the testimony of the paramedic and of one of the victims regarding their observations of signs or symptoms of overdose was inadmissible expert testimony. The trial court denied the motion, ruling that "as long as the witnesses are both able to lay a foundation for their knowledge, and their testimony does not veer into the area of scientific or technical processes which an average lay person would not be able to comprehend," they could testify on these issues.

2

[¶6] Five victims testified at trial.  The State also introduced into evidence, and played for the jury, a video of the incident that had been captured by a home surveillance camera located on an apartment building at the intersection.  In addition, the State presented testimony from the police officer who spoke with the defendant at the hospital and from the paramedic who treated him at the accident scene regarding their observations of the defendant.

[¶7] At the close of the State's case, the defendant moved to dismiss all of the charges.  The trial court dismissed two of the reckless conduct charges, and dismissed the driving under the influence of drugs or alcohol charge and the second degree assault charge after finding that the State had not presented any evidence that an opioid is a controlled drug.

[¶8] The defendant then requested that the trial court instruct the State not to refer in its closing argument to the administration of Narcan because the two charges referencing the defendant's use of a controlled drug had been dismissed.  The State objected, arguing that the testimony was relevant to the remaining reckless conduct charges because it allowed the jury to reasonably infer that the defendant "consciously chose to take a controlled drug, consciously chose to get behind the wheel of an automobile, a 2,000-pound deadly weapon, and . . . consciously chose to drive down a public way."  The trial court ruled that the State would be permitted to mention Narcan in its closing argument, because it was relevant to the remaining charges given that it was "intrinsically involved in what was happening at that time."  The trial court also ruled that the State could refer in closing to the paramedic's testimony that she observed the defendant's pinpoint pupils, and her explanation of why she administered Narcan.  The State referenced the administration of Narcan and the paramedic's testimony about pinpoint pupils in its closing argument.

[¶9] The jury convicted the defendant on five counts of reckless conduct, and found him not guilty of disobeying a police officer.  The defendant moved to merge the five reckless conduct convictions for sentencing, arguing that all five charges stemmed from one criminal course of conduct.  The trial court denied the defendant's motion, and thereafter, at a hearing, imposed five separate sentences.  This appeal followed.

II. Analysis

a. Lay Witness Testimony

[¶10] The defendant first argues that the trial court erred by admitting testimony from lay witnesses about alleged opioid use.  The State disputes that the trial court erred in admitting this testimony, but argues that even if the trial court erred, any error was harmless beyond a reasonable doubt.  For the

purposes of this appeal, we need not determine whether the trial court erred, because we conclude that any error was harmless beyond a reasonable doubt. See State v. Cooper, 168 N.H. 161, 165 (2015); State v. Ramsey, 166 N.H. 45, 47 (2014).

[¶11] To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdict. State v. Rouleau, 176 N.H. 400, 407 (2024), 2024 N.H. 2, ¶20. To determine whether the erroneous admission of evidence affected the verdict, we consider the alternative evidence presented as well as the character of the erroneously admitted evidence, and evaluate the totality of the circumstances at trial. Id. The factors we consider in assessing whether an error did not affect the verdict include, but are not limited to: (1) the strength of the State's case; (2) whether the admitted or excluded evidence is cumulative or inconsequential in relation to the strength of the State's case; (3) the frequency of the error; (4) the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; (5) the nature of the defense; (6) the circumstances in which the evidence was introduced at trial; (7) whether the court took any curative steps; (8) whether the evidence is of an inflammatory nature; and (9) whether the other evidence of the defendant's guilt is of an overwhelming nature. Id. at 407-08, 2024 N.H. 2, ¶21. No one factor is dispositive. Id. at 408, 2024 N.H. 2, ¶21. We may consider factors not listed above, and not all factors may be implicated in a given case. Id.

[¶12] To convict the defendant of felony reckless conduct as charged in each of the indictments, the State had to prove, as to each victim: (1) that the defendant recklessly engaged in conduct that placed or may have placed another person in danger of serious bodily injury by driving his motor vehicle at a high rate of speed, striking the victim's motor vehicle (or, with respect to one of the victims, striking a vehicle which then struck that victim's vehicle); and (2) that by using his motor vehicle in such a way, it constituted a deadly weapon. See RSA 631:3, I, II; RSA 625:11, V. To prove that the defendant acted with "reckless" mens rea, the State was required to prove that the defendant was "aware of and consciously disregard[ed] a substantial and unjustifiable risk" that serious bodily injury "w[ould] result from his conduct." RSA 626:2, II(c) (2016); see RSA 631:3, I. "The risk must be of such a nature and degree that, considering the circumstances known to him, its disregard constitutes a gross deviation from the conduct that a law-abiding person would observe in the situation." RSA 626:2, II(c). Because determining the defendant's awareness is a subjective inquiry, it may be proved by any surrounding facts or circumstances. See State v. Carnevale, 172 N.H. 700, 704 (2019).

[¶13] The evidence of the defendant's reckless conduct in this case is overwhelming. One witness testified that as the defendant approached the intersection, he tried to drive between two rows of vehicles. Other witnesses

4

described the defendant's high rate of speed as he approached the intersection and the force with which he hit multiple vehicles. The State also introduced a video of the vehicle driven by the defendant hitting the victims' vehicles when they were stopped at a red light. The defendant did not request that the video be transferred to this court. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (stating that appealing party bears burden of providing a record on appeal sufficient to decide the questions raised, and that relevant portions of the evidentiary record not provided on appeal are presumed to support the result reached by the trial court). The parties agree that the video depicts the defendant's car entering the intersection, striking several cars, and flipping over. Even without testimony from the paramedic and the police officer about alleged opioid use, the evidence was overwhelming that the defendant was aware that driving his car at a high rate of speed into an intersection filled with cars stopped at a red light would pose a substantial and unjustifiable risk to the occupants of those vehicles, and that disregarding that risk was a gross deviation from what a law-abiding person would do under the circumstances. See Carnevale, 172 N.H. at 704; RSA 626:2, II(c). The admitted testimony was neither lengthy nor inflammatory, and, given the overwhelming evidence of the defendant's guilt, was inconsequential.

### b.  Closing Argument

[¶14] The defendant next argues that the trial court erred when it permitted the State to refer in its closing argument to evidence that the defendant was under the influence of opioids. He contends that allowing the State to refer to this evidence in its closing argument "invited an impermissible amendment of the indictments." However, defense counsel argued before the trial court only that any reference to opioid use was not relevant. Because the defendant did not make the argument in the trial court that he advances on appeal, the argument is not preserved for our review, and we decline to address it. See State v. Gross-Santos, 169 N.H. 593, 598 (2017) (explaining that purpose of preservation rule is to insure that trial court has opportunity to rule on issues and to correct alleged errors before parties seek appellate review).

### c.  Unit of Prosecution

[¶15] Finally, the defendant argues that the trial court erred when it did not merge the five reckless conduct charges into one charge for sentencing. See RSA 631:3. He contends that "[t]he gravamen of RSA 631:3 is a defendant's reckless conduct, not the number of persons who may be put at risk as a result of such conduct." The State disagrees, arguing that "the unit of prosecution in a reckless conduct offense is harm-centered, because it is based upon each individual who is placed in danger of serious bodily injury." Therefore, the State contends, the statute authorizes multiple charges of reckless conduct when multiple individuals are placed in danger of serious bodily injury by a defendant's conduct.

5

[¶16] Multiple punishment cases come in two varieties: first, "double-description" cases, in which the issue is whether two statutes describe two separate offenses or are merely different descriptions of the same offense; and second, "unit-of-prosecution" cases, in which the issue is whether a defendant's continuing course of conduct is fragmented into more than one violation of a single statutory provision. See State v. Lynch, 169 N.H. 689, 706 (2017). Here, to determine whether the defendant is subject to multiple punishments for the same offense, we must determine the "unit of prosecution" intended by the legislature. See State v. Ravell, 155 N.H. 280, 282 (2007); see also State v. Chalpin, 176 N.H. ___, ___ (2024), 2024 N.H. 36, ¶32 ("To determine whether a defendant is subject to multiple punishments for the same offense, in violation of the protection provided by the Federal Constitution, we must determine the unit of prosecution intended by the legislature." (quotation omitted)).

[¶17] "All provisions" of the Criminal Code "shall be construed according to the fair import of their terms and to promote justice." RSA 625:3 (2016). In doing so, we must first look to the plain language of the statute to determine legislative intent. State v. McKeown, 159 N.H. 434, 435 (2009). Because the question before us is one of statutory construction, our review is de novo. State v. Fogg, 170 N.H. 234, 236 (2017).

[¶18] RSA 631:3, I, provides that "[a] person is guilty of reckless conduct if he recklessly engages in conduct which places or may place another in danger of serious bodily injury." See RSA 631:3, II (reckless conduct classified as class B felony "if the person uses a deadly weapon as defined in RSA 625:11, V"). As the defendant correctly contends, the statute focuses on the defendant's conduct, not on the number of persons who are or who may be placed in danger as a result of that conduct. The unit of prosecution arises from the defendant's continuing course of conduct. The course of conduct is a single unit of prosecution.

[¶19] We find support for this decision in State v. Fogg. The defendant in Fogg was convicted on two counts of aggravated driving while intoxicated (DWI) — one count for the injuries sustained by each occupant of the vehicle that the defendant had hit while driving while intoxicated. Fogg, 170 N.H. at 235; see RSA 265-A:3 (2014) (amended 2020). At issue on appeal was whether the language of the aggravated DWI statute supported only one charge. Fogg, 170 N.H. at 235-36. We considered the terms and structure of the statute as a whole, and concluded that "the legislature did not intend the 'unit of prosecution' under subsection I(b) of the statute to turn upon the number of persons suffering serious bodily injury in a single collision resulting from operation of a vehicle on a particular occasion." Id. at 236-37. We explained:

Our conclusion is based, in large measure, upon the incongruous outcomes that would result were we to construe the statute in the manner advocated by the State.

For example, under the State's view, . . . an intoxicated driver carrying four high school companions could face four counts of aggravated DWI, even though he obviously drove the vehicle only once. In the absence of a very clear indication to the contrary from statutory text — which we do not find in RSA 265-A:3 — we will not presume that the legislature intended to impose such harsh and uneven consequences.

Id. at 237. Although we acknowledged that, if it disagreed with our interpretation, the legislature could amend the statute, see id., we have seen no indication in the seven years since we decided Fogg of such disagreement.

[¶20] Similarly, here, under the State's view, had there been a driver and four passengers in each of the cars stopped at the red light when the defendant recklessly drove his car at a high rate of speed into the intersection, the defendant could have faced twenty-five counts of reckless conduct even though he recklessly drove his car into the intersection only once. By contrast, had there been but one car with a single driver who was endangered by the defendant's reckless conduct, the defendant would have faced but a single count for the same conduct. In the absence of a clear indication to the contrary from statutory text — which we do not find in RSA 631:3 — we will not presume that the legislature intended to impose such uneven consequences. See Fogg, 170 N.H. at 236. Accordingly, we conclude that it was error for the trial court to deny the defendant's motion to merge the charges for sentencing.

[¶21] Of course, if the legislature disagrees with our construction of this statute, it is free, within constitutional limits, to amend it as it deems fit. See id.

[¶22] For the above reasons, we affirm the defendant's conviction on the reckless conduct charges but reverse its decision to deny the defendant's motion to merge the charges for sentencing, and remand.

Affirmed in part; reversed in part; and remanded.

BASSETT and DONOVAN, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but did not participate in the final vote.

7