# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2023-0302, <u>State of New Hampshire v. Kenneth Brunelle</u>, the court on April 8, 2025, issued the following order:

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. See Sup. Ct. R. 20(3). The defendant, Kenneth Brunelle, was convicted by a jury on one count of second degree assault-domestic violence, see RSA 631:2, III(a) (Supp. 2024), two counts of domestic violence-simple assault, see RSA 631:2-b, I(a) (2016), and three counts of criminal threatening, see RSA 631:4, I(c), (d) (2016). On appeal, the defendant argues that the trial court erred by: (1) admitting text messages sent from the victim to her sister; and (2) applying an incorrect standard when conducting an <u>in</u> <u>camera</u> review of the victim's counseling records. We affirm.

I. <u>Background</u>

The jury could have found the following facts. The victim and the defendant were married and lived together at the time of the charged conduct. On the evening of December 12, 2019, the victim was at home alone. When the defendant returned home, he began yelling at the victim. The victim attempted to leave the house to avoid the defendant. As she tried to leave, the defendant grabbed the victim's hair, dragged her into the kitchen, and threw her onto the floor. The defendant threatened to harm the victim, her family, and her dogs. The defendant put his hands around the victim's throat and repeated the threats. After the defendant stopped strangling the victim, she crawled into her bedroom where she retrieved her phone. The victim testified that she "immediately" began texting her sister and stated she "was afraid for [her] life." She stayed in her bedroom or bathroom while texting her sister. The defendant periodically entered the bedroom and bathroom briefly while the victim was there.

The victim (V) recounted these events to her sister (S) in the following text messages:

S: Want me to say no lights or sirens
V: He will know because it is quiet now
V: No
V: Because I will get hurt
V: Please I want my teeth
V: It is quiet now

S: Ok
V: I will go on [sic] morning he will not know
S: [redacted]
V: No
V: If you call he said he will put me on a breathing tube
V: They take too long
V: He will hurt me and dog
V: He will not be here on Saturday
V: Don't call him or cops he will hurt me
V: He is yelling and screaming still I am on toilet pretending I am going to bathroom
V: He don't know I have phone
V: He is going to dover Saturday maybe you and josh can come up
S: Call 911
V: If I start process and paperwork comes here idk
V: If I call he said he will beet [sic]
S: [redacted]
S: [redacted]
V: I know
V: I will
V: [redacted]
V: You know I am serious
S: [redacted]
V: That is why I told you and talked with you
S: [redacted]
V: I am weak and under stress and duress
V: I just need to loe [sic] here now
V: I will call you if anything else happens
V: I cant get out because my keys for truck are hidden
S: Why
V: I'm stuck all I have is my phone he don't know I have it
S: [redacted]
S: [redacted]
V: I said I left it in car
S: I ll tell them no light and no siren
V: I will call or text you when he gets up
S: [redacted]

The next morning, the police spoke with the defendant and the victim. The police were subsequently provided with screenshots of the text messages the victim had sent to her sister.

Before trial, the defendant moved in limine to exclude the text messages, arguing that all but four were inadmissible hearsay. The defendant conceded that four messages would be admissible under New Hampshire Rule of Evidence 803(1): "[h]e will know because it is quiet now," "it is quiet now," "I

2

am weak and under stress and duress," and "[h]e is yelling and screaming still I am on toilet pretending I am going to bathroom." The State objected, asserting that all of the text messages were admissible under the "present-sense impression" and "then-existing mental, emotional, or physical condition" exceptions to the hearsay rule. The Superior Court (Ignatius, J.) determined that, "[a]ssuming a proper foundation" was laid at trial, most of the text messages would be admissible under the two hearsay exceptions. In addition, the trial court ruled that "limited" texts sent from the victim's sister to the victim were admissible "for continuity and context."

The defendant also moved for an in camera review of the victim's counseling records. In support, the defendant asserted that the victim's "mental health status" may have led the victim to "say something happened when it did not." The State objected, arguing that the defendant had not met his burden to demonstrate a "reasonable probability that the records contain information that is material and relevant to his defense." (Quotation and emphasis omitted.) The Superior Court (Schulman, J.) granted the defendant's motion, reviewed the records, and decided "in an overabundance of caution" to release some, but not all, of the victim's counseling records.

At trial, the State introduced the text messages as a single exhibit. The victim testified that she sent the text messages to her sister after the defendant had strangled and threatened her. After a four-day jury trial, the jury convicted the defendant on one count of second degree assault-domestic violence, two counts of domestic violence-simple assault, and three counts of criminal threatening. This appeal followed.

II. Analysis

A. Evidentiary Ruling

We first address the defendant's argument that the trial court erred in admitting the victim's text messages to her sister as either "present-sense impressions" or "then-existing mental, emotional, or physical conditions." See N.H. R. Ev. 803(1), (3). He asserts that the statements "do not 'describe' or 'explain' a 'condition' or 'event' that [the victim] was contemporaneously perceiving or had just perceived." Rather, the defendant argues, the victim's messages state "what she might do at some later time, what she wanted her sister to do or not do, what she speculated [the defendant] might do, and what she claimed [the defendant] had at some unknown time threatened to do."

We review the trial court's ruling on the admissibility of evidence for an unsustainable exercise of discretion, and will reverse only if it was clearly untenable or unreasonable to the prejudice of the defendant's case. State v. Rouleau, 176 N.H. 400, 405 (2024), 2024 N.H. 2, ¶13. In applying our unsustainable exercise of discretion standard of review, we determine only

whether the record establishes an objective basis sufficient to sustain the discretionary judgment made.  Id.

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement." N.H. R. Ev. 801(c).  Hearsay is inadmissible unless it falls within one of the exceptions provided in the rules of evidence. Simpkins v. Snow, 139 N.H. 735, 737 (1995).

One such exception relates to statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." N.H. R. Ev. 803(1).  To qualify for this exception, statements must be "essentially contemporaneous with the event." Simpkins, 139 N.H. at 738 (quotation omitted).  Another exception relates to statements of the declarant's then-existing "state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)." N.H. R. Ev. 803(3).  To be admissible under this exception, the statement must concern the mental state of the declarant and have reference to the time at which the statement was made. See State v. Legere, 157 N.H. 746, 764 (2008).

At issue from the list of messages set forth above are twenty-eight messages that the victim sent to her sister.  In addition to the four messages that the defendant conceded in his pretrial motion were admissible, he concedes on appeal that another five of the victim's messages were admissible: "[b]ecause I will get hurt;" "[p]lease I want my teeth;" "I will call you if anything else happens;" "I cant get out because my keys for truck are hidden;" and "I'm stuck all I have is my phone he don't know I have it."  Therefore, the defendant challenges nineteen messages on appeal.

We conclude that four of those nineteen messages were admissible as present-sense impressions because they described the victim's perception of the events as they were occurring or immediately after. See N.H. R. Ev. 803(1). The victim texted her sister saying "[i]f you call he said he will put me on a breathing tube," "[h]e don't know I have phone," "[i]f I call he said he will beet [sic]," and "I just need to loe [sic] here now."

Further, the fact that the victim waited until she was in her bedroom and had retrieved her cell phone does not defeat the immediacy requirement of the present-sense impression exception. Cf. Simpkins, 139 N.H. at 738.  In Simpkins, the declarant repeated allegedly defamatory statements he had been told by the defendant. Id. at 738.  We explained that because "[s]ome lapse of time occurred" between the statements being made and their repetition, the lapse had given the declarant "time to reflect on the event," leading to a possibility of a "calculated misstatement." Id.  Therefore, we concluded, the repeated statement was not "essentially contemporaneous" with the initial statement to qualify for the present-sense exception. See id. at 738-39.  Unlike

4

<u>Simpkins</u>, the record here does not suggest that there was such a lapse between the victim perceiving the defendant's physical and verbal abuse and sending the text messages to her sister sufficient to render the statements not "essentially contemporaneous" with the events. <u>Id</u>. Therefore, we conclude that the trial court did not unsustainably exercise its discretion in admitting the text messages under the present-sense impression exception to the rule against hearsay.

We conclude that, in addition, five of the victim's text messages were admissible as statements of her then-existing emotional, physical, or mental state. <u>See</u> <u>N.H. R. Ev.</u> 803(3). The victim wrote to her sister that "I will go on [sic] morning he will not know," "[h]e will hurt me and dog," "[d]on't call him or cops he will hurt me," "[t]hat is why I told you and talked with you," and "I will call or text you when he gets up." These messages relate the victim's ongoing fear of the defendant. The messages also indicate her plans to leave to avoid the defendant and to leave the following morning. Because the text messages were statements of the victim's mental state at the time the texts were sent, we conclude that the trial court did not unsustainably exercise its discretion in admitting them as statements of the victim's then-existing state of mind.

The remaining ten messages sent from the victim to her sister were: "[n]o;" "[n]o;" "[t]hey take too long;" "[h]e will not be here on Saturday;" "[h]e is going to dover Saturday maybe you and josh can come up;" "[i]f I start process and paperwork comes here idk;" "I know;" "I will;" "You know I am serious;" and "I said I left it in car." The State argues that the trial court did not err by admitting the victim's remaining text messages, and that even if there was error, it was harmless beyond a reasonable doubt "because there was strong and overwhelming evidence of the defendant's guilt." We agree that any error was harmless.

To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdict. <u>Rouleau</u>, 176 N.H. at 407, 2024 N.H. 2, ¶20. This standard applies to both the erroneous admission and exclusion of evidence. <u>Id</u>. We consider the alternative evidence presented at trial as well as the character of the erroneously admitted evidence itself. <u>Id</u>. To determine whether the State has proven beyond a reasonable doubt that an error did not affect the verdict, we must evaluate the totality of the circumstances at trial. <u>Id</u>.

Based upon our review of the record, we conclude that the evidence that the defendant assaulted the victim is of an overwhelming nature, and that the remaining text messages were inconsequential in relation to the strength of the other evidence of guilt. The victim's admissible statements to her sister were evidence of the assault immediately after it occurred. The victim testified at trial about the assault and the injuries she sustained from it. The victim's sister also testified about calling the police after she received the text messages

from the victim. The jury also heard evidence from the physician assistant who treated the victim — evidence that corroborated the victim's testimony about the injuries she suffered from the defendant's assault. Thus, even if the remaining ten text messages from the victim had not been admitted, there was overwhelming evidence that the defendant assaulted the victim. Accordingly, we conclude that the State has met its burden of proving that any error in admitting the remaining text messages did not affect the verdict and was harmless beyond a reasonable doubt. See id.

B. In Camera Review

The defendant argues that the court "may have erred in failing to disclose material in the records it reviewed in camera" because its order references State v. Gagne, 136 N.H. 101 (1992), rather than State v. Girard, 173 N.H. 619 (2020), which clarified Gagne. (Capitalization omitted.) Although the defendant did not request clarification or reconsideration from the trial court, we assume that this issue is properly preserved.

Stating that it "conducted an in camera Gagne review" of the victim's counseling records, the trial court released some records to the defense in an "overabundance of caution," including those portions of the records that mention the defendant. The trial court did not release information it found was either "not germane" or "exceedingly private." The court's order is dated July 19, 2021, approximately nine months after Girard was issued. Absent some indication to the contrary, we presume that the trial court was aware of Girard. We conclude that by stating that the undisclosed records were either "not germane" or "exceedingly private," the court found that no material and relevant evidence was in fact contained in those records. See Girard, 173 N.H. at 628.

The defendant requests that we review the counseling records provided to the trial court for in camera review "to determine whether the court erred in failing to release additional material." Having reviewed the records examined by the trial court, we conclude that the court's decision regarding these records was consistent with Gagne, as clarified by Girard, and find no error.

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**

6