NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
Case No. 2023-0526
Citation: State v. Reed, 2025 N.H. 34

THE STATE OF NEW HAMPSHIRE

v.

DENNIS REED

Argued: February 6, 2025
Opinion Issued: August 6, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, assistant attorney general, on the brief and orally), for the State.

Brennan, Lenehan, Iacopino & Hickey, of Manchester (Michael J. Iacopino and Alexandra M. Brill on the brief, and Michael J. Iacopino orally), for the defendant.

MACDONALD, C.J.

[¶1] The defendant, Dennis Reed, appeals his convictions following a jury trial in the Superior Court (St. Hilaire, J.) on nine counts of aggravated

felonious sexual assault (AFSA), see RSA 632-A:2, I(k) (2007), and eight counts of sexual assault, see RSA 632-A:4, I(a) (2007).  On appeal, the defendant argues that his convictions must be reversed because the trial court erroneously allowed the State to: (1) argue that he was in a position of authority over the victim because he was her "father figure" and her religious leader; and (2) introduce evidence of an uncharged sexual act between the defendant and the victim.  We affirm.

## I.    Background

[¶2] The jury could have found the following facts.  The defendant met the victim when she was nine years old.  The defendant was forty-five years older than the victim.  The victim's parents were divorced, and the victim's relationship with her biological father had grown distant.  The defendant was aware that the victim wanted a father figure, and he assumed that role in her life.  The victim began spending time with the defendant and his wife, calling the defendant "dad," and attending church with the defendant and his family.  The victim began working for the defendant when she was fifteen years old.

[¶3] According to the victim, the defendant first sexually penetrated her in a parking lot in Manchester when she was fifteen years old while he was driving her to work (the "Manchester conduct").  Thereafter, the defendant and the victim had sexual relations "hundreds" of times at her place of employment and at the defendant's home, among other locations.

[¶4] In 2023, the defendant was charged, inter alia, with ten counts of AFSA as a person in a position of authority over the victim and eleven counts of sexual assault based on conduct that was alleged to have occurred between 2005 and 2007.  None of the charges related to the Manchester conduct.  The defendant filed motions to preclude the State from arguing that, because he was a father figure and a religious leader to the victim, the defendant was in a position of authority over the victim within the meaning of RSA 632-A:2, I(k).  The trial court denied the motions, and the State argued at trial that the defendant was in a position of authority over the victim because of those relationships.

[¶5] The defendant also moved to exclude evidence pertaining to the Manchester conduct from trial, arguing that it was inadmissible because it was irrelevant, unfairly prejudicial, and evidence of another wrongful act.  The trial court denied the motion, ruling that the Manchester conduct was relevant and inextricably intertwined with the charged conduct, and that its probative value outweighed the risk of unfair prejudice.  During trial, the victim testified about the Manchester conduct.

2

[¶6] After a twelve-day jury trial during which twenty-one witnesses testified, the defendant was found guilty on nine counts of AFSA and eight counts of sexual assault.  This appeal followed.

II.    Analysis

[¶7] On appeal, the defendant argues that his positions as the victim's father figure and her religious leader cannot amount to positions of authority under RSA 632-A:2, I(k) as a matter of law.  He also asserts that there was insufficient evidence to prove that he was in a position of authority over the victim and that he used that position to coerce her to submit.  He finally argues that the trial court committed reversible error when it allowed the State to introduce evidence related to the Manchester conduct.  We address these arguments in turn.

A. Position of Authority

[¶8] The defendant argues that his roles as the victim's father figure and her religious leader cannot qualify as positions of authority over the victim under the meaning of RSA 632-A:2, I(k).  He asserts that those roles cannot qualify as positions of authority because they are not "formal or official" positions carrying "formal authority."  We disagree.

[¶9] The version of RSA 632-A:2, I(k) in effect at the time of the charged acts provided:

> A person is guilty of the felony of [AFSA] if such person engages in sexual penetration with another person . . . [w]hen, except as between legally married spouses, the victim is 13 years of age or older and under 18 years of age and the actor is in a position of authority over the victim and uses this authority to coerce the victim to submit.

RSA 632-A:2, I(k) (2007).

[¶10] A person must be in a "position of authority over the victim" to violate RSA 632-A:2, I(k).  The defendant argues that a "formal or official" position is required.  We review questions of statutory interpretation de novo. See L.C. v. W.C., 174 N.H. 355, 359 (2021).  When engaging in statutory interpretation, we first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used.  See id.  This case requires us to interpret the Criminal Code.  "Words and phrases shall be construed according to the common and approved usage of the language." RSA 21:2 (2020).  "All provisions of this code shall be construed according to the fair import of their terms and to promote justice."  RSA 625:3 (2016).

3

[¶11] At the outset, we observe that the words "formal or official" do not appear in the statute's text. See RSA 632-A:2, I(k). When engaging in statutory interpretation, we will neither consider what the legislature might have said nor add words that it did not see fit to include. L.C., 174 N.H. at 359.

[¶12] "Position" is not defined in the statute, see RSA 632-A:2, I(k), and we therefore give it its plain and ordinary meaning, turning to the dictionary for guidance. See RSA 21:2; State v. Dunbar, 177 N.H. ___, ___ (2025), 2025 N.H. 26, ¶10. "Position" is defined as: "A relation in which a person stands with respect to another or others; a person's circumstances, condition, or situation, esp. as affecting his or her influence, role, or power to act; spec. (frequently in social position) status, rank, standing." Oxford English Dictionary, https://www.oed.com/dictionary/position_n?tab=meaning_and_use&tl=true (last visited August 5, 2025). The defendant's roles as the victim's father figure and her religious leader are "social position[s]" with respect to the victim, which lie within the plain meaning of "position." See id. (emphasis omitted).

[¶13] The defendant further argues that he needed to have "formal authority" over the victim, and whether a position holds formal authority "must be viewed from an objective analysis of the position and not the subjective view of the alleged victim." The defendant's argument is contrary to our construction of both "position" and "authority," and finds no support in our precedent.

[¶14] We have construed "authority" under RSA 632-A:2, I(k) to mean the "power to require and receive submission: the right to expect obedience: superiority derived from a status that carries with it the right to command and give final decisions." State v. Fortier, 146 N.H. 784, 794 (2001) (quotation and citation omitted). We held in Fortier that a priest was in a position of authority over his victims. Id. at 795. In reaching that conclusion, while we considered the fact that the defendant held some authority over his victims because they helped him with tasks to prepare for religious services, we also considered the victims' subjective beliefs. See id. at 794-95. We observed that one of the victims testified that he became the defendant's altar server because he wanted to become "closer to God." Id. at 794. We further emphasized that the defendant was both victims' "personal religious leader" throughout the time of the assaults. Id. at 795. Those facts demonstrated the victims' subjective beliefs that the defendant had authority over them due to their views on religion and the power that they ascribed to the defendant as a religious leader. See id. at 794-95.

[¶15] Similarly, we concluded in State v. Chase that being the "head of the household" was a sufficient position of authority under RSA 632-A:2, I(k). See State v. Chase, 135 N.H. 209, 211 (1991). The facts of Chase do not

4

suggest that the victim was related to the defendant or that the defendant had any formal authority over the victim, other than perhaps the authority to ask her to leave his house. See id. We also observe that, contrary to the defendant's argument, nothing in Chase suggests that cohabitation is a requirement for a non-relative adult to assume a position of authority over a child. See id. Accordingly, we conclude that the defendant's roles as the victim's father figure and her religious leader can qualify as positions of authority under RSA 632-A:2, I(k).

B. Sufficiency of the Evidence

[¶16] The defendant further argues that the evidence was insufficient to prove that his role as the victim's father figure was a position of authority over her. We disagree. Challenges to the sufficiency of the evidence raise a claim of legal error, which we review de novo. State v. Hodges, 176 N.H. 751, 754 (2024), 2024 N.H. 44, ¶10. When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State. Id.

[¶17] The victim, who had known the defendant since she was nine years old, spent time with the defendant and his family and attended church with the defendant. At fifteen years old, the victim asked the defendant if she could call him "dad" because "he was filling in those roles as a father figure." Indeed, the fact that the victim viewed the defendant as akin to her father can be seen in her high school writings and in her correspondence with the defendant, in which she consistently referred to him as her "dad," "daddy," and "surrogate dad." For his part, the defendant would refer to the victim as his "daughter." The victim even shared a father-daughter dance with the defendant at her wedding. Such evidence is sufficient to support the conclusion that the defendant assumed a position as the victim's father figure.

[¶18] Moreover, the evidence supports that the defendant's father figure role came with authority over the victim. The victim was a teenager, and the defendant was forty-five years her senior. The victim testified that she did not feel that she was in a position to "question an adult." The victim sought advice from the defendant in his capacity as her father figure, was baptized into the defendant's church without her mother's knowledge because she "went by what [the defendant] told [her]," and allowed the defendant to intervene in her romantic relationships on multiple occasions. The victim's mother testified that she felt that the defendant had "too much control over [the victim's] thoughts and what she did," and that everything the defendant said "became gospel" to the victim. Indeed, the victim testified that she "basically took [the defendant's] word over God." The victim's sister testified that "there was

5

always some sense of control," and that the victim did not "make decisions without [the defendant's] approval." The victim viewed the defendant as akin to a parent. Accordingly, we conclude that the evidence supports that the defendant's role as the victim's father figure put him in a position of authority over her.

[¶19] Finally, the evidence supports that the defendant used his father figure role to coerce the victim to submit to his sexual advances. Coercion under RSA 632-A:2, I(k) means "to restrain, control or dominate, nullifying individual will or desire[;] . . . to compel an act or choice by force, threat, or other pressure[;] . . . to effect, bring about, establish, or enforce by force, threat, or other pressure." Fortier, 146 N.H. at 795 (citation omitted). A person in a position of authority who uses such authority in any way to coerce the child's submission to sexual activity is subject to prosecution, whether the coercion involves undue influence, physical force, threats, or any combination thereof. Id. Coercion need not be overt, but may consist of the subtle persuasion arising from the position of authority. Id.

[¶20] The evidence supports that the defendant used his role as the victim's father figure to "develop a relationship of trust" with the victim, gain "unsupervised access" to her, and subtly coerce her into submission. Id. He became her father figure when he knew that her relationship with her biological father was distant. The victim wrote in high school that the defendant was "like a father" to her. Through that role, he gained unsupervised access to her. He exploited that relationship to perform massages on the victim, which she never objected to because she felt "obedient" to him. He gave her hugs, which she allowed because she thought he loved her. When he asked her to sit on his lap, she complied because it made her feel special. When the defendant escalated to sexual activity, the victim submitted because she believed that such things were normal between a father and a daughter, and she never told anyone because she feared that telling people would "ruin his life and his reputation," and because she "didn't want to lose him as a father." The victim testified that she later came to "understand the grooming . . . that had been done," and realized that the relationship was not consensual.

[¶21] As in Fortier, "[t]he evidence makes it nearly impossible to divorce the defendant's position of authority from his interactions with the victim[]." Id. at 796. Accordingly, the evidence supports that the defendant was in a position of authority over the victim as her father figure and that he used that authority to "employ a tactic of manipulation" and to exert "subtle pressure" to coerce her to submit. Id.

6

C. Harmless Error

[¶22] The defendant next argues that his convictions must be reversed because the trial court erroneously allowed the victim to testify about the Manchester conduct and because the evidence was insufficient to support that he was in a position of authority over the victim as her religious leader. We need not decide whether the trial court erred on these points, however, because even if we assume that it did, any error was harmless.

[¶23] To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdicts. State v. Rouleau, 176 N.H. 400, 407 (2024), 2024 N.H. 2, ¶20. This standard applies to both the erroneous admission and exclusion of evidence. Id. We consider the alternative evidence presented at trial as well as the character of the erroneously admitted evidence itself. Id. To determine whether the State has proven beyond a reasonable doubt that an error did not affect the verdict, we must evaluate the totality of the circumstances at trial. Id.

[¶24] The factors that we consider in assessing whether an error did not affect the verdict include, but are not limited to:

> (1) the strength of the State's case; (2) whether the admitted or excluded evidence is cumulative or inconsequential in relation to the strength of the State's case; (3) the frequency of the error; (4) the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; (5) the nature of the defense; (6) the circumstances in which the evidence was introduced at trial; (7) whether the court took any curative steps; (8) whether the evidence is of an inflammatory nature; and (9) whether the other evidence of the defendant's guilt is of an overwhelming nature.

Id. at 407-08, 2025 N.H. 2, ¶21 (citations omitted). No one factor is dispositive. Id. at 408. We may consider factors not listed above, and not all factors may be implicated in a given case. Id.

[¶25] Here, the evidence of the defendant's guilt based on his role as the victim's father figure is overwhelming and the admission of testimony regarding the Manchester conduct was inconsequential in relation to the strength of the State's case. Regarding the admission of testimony pertaining to the Manchester conduct, we observe that the jury trial spanned twelve days and included testimony from twenty-one witnesses. The victim's testimony regarding the Manchester conduct comprised a small portion of her several days of testimony.

7

[¶26] Further, because there is overwhelming evidence of the defendant's guilt based upon his position as the victim's father figure, we are persuaded beyond a reasonable doubt that, if the evidence was insufficient to support the jury's verdict based upon his role as her religious leader, then any error was harmless. See id. As described above, the jury heard evidence describing how the defendant met the victim at a young age and became her father figure over the course of many years; indeed, the defendant himself called the victim his "daughter." Multiple witnesses testified that the defendant controlled the victim through that relationship. Finally, the evidence clearly establishes that the defendant used that authority to coerce her to submit to sexual activity. The victim testified that when the defendant began engaging in sexual activity, she complied because she believed that such things were normal between a father and a daughter, and that she did not tell anyone about it because she feared losing the defendant as a father figure if she did. Accordingly, on this record, we conclude beyond a reasonable doubt that if the trial court erred when it allowed testimony pertaining to the Manchester conduct, and if the evidence was insufficient to support the defendant's conviction based on his position as her religious leader, then any error was harmless.

[¶27] In sum, we conclude that the defendant has failed to demonstrate reversible error. We have considered the defendant's remaining arguments and conclude that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993). Accordingly, we affirm.

Affirmed.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

8